**John DOE, Plaintiff-Appellant,**

v.

**E. E. PRINGLE et al.,
Defendants-Appellees.**

**No. 75–1875.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 24, 1976.

Decided Nov. 29, 1976.

Rehearing Denied Dec. 27, 1976.

Jonathan B. Chase, Boulder, Colo. (Albert T. Frantz, Denver, Colo., on the brief), for plaintiff-appellant.

Mary J. Mullarkey, Asst. Atty. Gen., Denver, Colo. (J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., and Mary A. Rashman, Asst. Atty. Gen., Denver, Colo., on the brief), for defendants-appellees.

Before SETH, BREITENSTEIN and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

John Doe appeals from the district court order granting the appellees' (defendants below) motion to dismiss his civil rights complaint and causes of action, for lack of subject matter jurisdiction.

Doe graduated from an accredited law school. He successfully completed the Colorado Bar examination in February of 1973. In his application for admission to the Colorado Bar, Doe had disclosed his status as a convicted felon. He served a sentence following a 1971 guilty plea to violation of 26 U.S.C.A. § 4744(a)(unlawful possession, transportation, or concealment of marijuana without payment of the federal transfer tax). In light of the felony conviction—and with knowledge of the fact that he achieved a passing score on the examination—the Colorado State Board of Law Examiners found that Doe was "not properly qualified for admission to the Colorado Bar since he has been convicted of a felony." Subsequently, upon review, the Colorado Supreme Court unanimously adopted the recommendations and findings of the Bar Committee of the Board in formally denying Doe's admission.

On January 15, 1974, Doe requested that the Colorado Supreme Court reopen his case. The Court granted the request by directing the Bar Committee to conduct a hearing for the purpose of reconsidering Doe's application. The Bar Committee met with Doe some four occasions over a period of eleven months. A record of only one of the meetings was transcribed. On December 2, 1974, the Committee submitted its findings and recommendation that Doe had been rehabilitated and that he was presently fit to practice law. On January 10, 1975,

the Colorado Supreme Court unanimously determined, evidenced by a letter from Justice Erickson to Doe, that "on the basis of the proofs submitted on your ethical and moral qualifications, (the Court) has denied your application." Doe thereafter (having been informed by Chief Justice Pringle that he had exhausted his available avenues of relief under Colorado law) filed the instant proceeding seeking relief pursuant to 42 U.S.C.A. § 1983. He alleged jurisdiction pursuant to 28 U.S.C.A. § 1343(3).

Doe's complaint named as defendants the seven Justices of the Colorado Supreme Court. It contains four separate claims for relief, three anchored to the Due Process Clause and one to the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, to-wit: (1) That the Colorado Supreme Court violated Rule 217 of the Colorado Rules of Civil Procedure which provides in relevant part that "no applicant will be refused admission by reason of any ethical or moral disqualification without an opportunity to be heard. Hearing shall be had before the Court en banc, *or otherwise as the Court shall direct* "; and that by disregarding the recommendation of the Bar Committee and without the benefit of independent hearings the Court denied Doe due process of law; (2) That the Colorado Supreme Court had never before rejected a favorable recommendation of the Bar Committee and that in rejecting the recommendation in his case, the Court did so without any factual basis, thus acting arbitrarily and capriciously in violation of his right of due process of law, (3) That the Court's refusal to admit him was based solely on his past felony conviction, thereby irrebuttably presuming that he is not now qualified to practice, in violation of his right of due process of law, and (4) That other applicants for admission who have been convicted of similar felony offenses at about the stage of their professional careers as Doe have been admitted to the practice of law in Colorado and as a result Doe has been denied equal protection of the law. The relief sought is a declaratory judgment, a permanent injunction and

a specific order setting aside the Colorado Supreme Court's denial of Doe's application.

The United States District Court, in denying Doe relief, declared that there is a subtle but fundamental distinction between two types of claims which a frustrated bar applicant might bring to federal court: The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission. The Court held that while federal courts do exercise jurisdiction over many constitutional claims which attack the state's power to license attorneys involving challenges to either the rule-making authority or the administration of the rules [*Keenan v. Board of Law Examiners of North Carolina,* 317 F.Supp. 1350, (E.D.N.C.1970); *Goldsmith v. Pringle,* 399 F.Supp. 620, (D.Colo.1975); *Huffman v. Montana Supreme Court,* 372 F.Supp. 1175 (D.Mont.1974), aff'd 419 U.S. 955, 92 S.Ct. 216, 42 L.Ed.2d 172 (1974); *Brown v. Supreme Court of Virginia,* 359 F.Supp. 549 (E.D.Va.1973), aff'd 414 U.S. 1034, 94 S.Ct. 533, 38 L.Ed.2d 327, *rehearing denied,* 414 U.S. 1138, 94 S.Ct. 886, 38 L.Ed.2d 764 (1974)], *such is not true where review of a state court's adjudication of a particular application is sought.* The Court ruled that the latter claim may be heard, if at all, exclusively by the Supreme Court of the United States. The Court relied on the so-called "Theard Doctrine" announced in *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957), which involved a proceeding to disbar a lawyer from practice in federal court who had previously been disbarred by the Supreme Court of Louisiana for forging a promissory note at a time when he was suffering from a degree of insanity. Solely because of his disbarment by the state court, the attorney was subsequently disbarred by a federal district court by reason of a rule which provided that such action may be taken "whenever . . . any member of its bar has been disbarred . . . from practice . . . in any other court." Of significance to the district court in the case

at bar (and to this Court on appeal) is the following language set forth in *Theard, supra*:

It is not for this Court, except within the narrow limits of review open to this Court, as recently canvassed in *Konigsberg v. California* . . . and *Schware v. Board of Law Examiners* . . . to sit in judgment on Louisiana disbarments, and we are not in any event sitting in review of the Louisiana judgment. While a lawyer is admitted into a federal court by way of a state court, he is not automatically sent out of the federal court by the same route. The two judicial systems of court, the state judicature and the federal judiciary, have autonomous control over the conduct of their officers, among whom . . . lawyers are included . . . If the accusation (before the federal court) rests on disbarment by a state court, such determination brings title deeds of high respect. But it is not conclusively binding on the federal courts . . ."

354 U.S., at pp. 281, 282, 77 S.Ct. at p. 1276.

The district court also relied upon *Gately v. Sutton*, 310 F.2d 107 (10th Cir. 1962), which involved a civil rights action brought against the members of the Supreme Court of Colorado seeking to require them to set aside an order of disbarment. The primary Due Process complaint was aimed at the fact that the Supreme Court had entered the order of disbarment without permitting Gately to present evidence of the truth of his public allegation that the Chief Justice of the Colorado Supreme Court had accepted a bribe to influence or control the Court's decision in an appeal pending before it in which Gately represented the appellant. This Court denied relief and held, *inter alia*:

The Supreme Court of Colorado has exclusive jurisdiction to admit attorneys to practice in the Colorado courts and to strike them from the roll for misconduct . . . The federal courts do not have jurisdiction to review an order of the Colorado Court disbarring an attorney in

that state for personal and professional misconduct.

310 F.2d, at 108.

and:

. . . a petition for a writ of certiorari to the Supreme Court of the United States is the *only* method by which review may be had . . . Furthermore, the federal courts have no jurisdiction to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties, including disbarment proceedings.

310 F.2d, at 108.

The district court also cited *MacKay v. Nesbett*, 412 F.2d 846 (9th Cir. 1969), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969), which involved a challenge to the action of a majority of the Justices of the Alaska Supreme Court who had entered disciplinary orders suspending MacKay from the practice of law for a period of one year. The Court cited *Theard, supra, Gately, supra,* and other opinions in support of this rule:

. . . orders of a state court relating to the <u>admission,</u> discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United States on certiorari to the state court, and not by means of an original action in the lower federal court. The rule serves substantial policy interests arising from the historic relationship between state judicial systems and the members of their respective bars, and between the state and federal judicial systems . . . A federal court may, of course, examine a state court disciplinary proceeding if the state court's order is offered as the basis for suspending or disbarring an attorney from practice before a federal court. [Underlining supplied.]

412 F.2d, at 846.

*See also*: *Feldman v. State Board of Law Examiners*, 438 F.2d 699 (8th Cir. 1971); *Ginger v. Circuit Court for County of Wayne*, 372 F.2d 621 (6th Cir. 1967), *cert. denied*, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 998 (1967).

The district court's order denying Doe relief was accompanied by a detailed memorandum. In treating Doe's attempt to distinguish the act of denying an applicant the right to practice law from the judicial nature of the act of disbarment (in a due process setting), the Court rejected Doe's argument that since the Colorado Supreme Court is not required to conduct the "adjudicatory" proceedings mandated in disbarment proceedings leading to denial of an admission to practice law, *the denial must necessarily be an administrative act.* The significance, according to Doe, is that a claim involving deprivation of a federally protected right must be presented to the state court in compliance with the doctrine of exhaustion of available remedies, except when the court "in exercise of its judicial authority is performing a quasi-administrative function." (Brief of Appellant, p. 6.) The Court properly set this contention down by reference to these words from *In re Summers,* 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945):

> The act of admission is an exercise of judicial power, . . . a judgment, . . . even though it is not considered a judicial proceeding.
>
> 325 U.S., at 565, 566, 65 S.Ct. at 1310.

Doe also argues that the doctrine of comity does not preclude the federal district court's review of the processes used by a state court in denying his application for admission to the bar.

## I.

■ We concur in the district court's finding that it is without subject matter jurisdiction to review a final order of the Colorado Supreme Court denying *a particular application for admission* to the Colorado Bar. This rule applies even though, as here, the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights. The Court did not err in distinguishing the above rule from the rule that a federal district court may exercise jurisdiction in relation to review of alleged federal constitutional due process or equal protection deprivations in the state's adoption and/or administration of general rules and regulations governing admission. The district court properly invoked the "Theard Doctrine." *See also:* *Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 77 S.Ct. 732, 1 L.Ed.2d 796 (1957); *MacKay v. Nesbett, supra, Feldman v. State Board of Law Examiners, supra, Gately v. Sutton, supra.*

■ This action is, in essence, an attempt by Doe to seek review in inferior federal courts of the *entire* state proceedings, including the order of the Colorado Supreme Court refusing to grant his second application for admission. That function is one reserved exclusively to the United States Supreme Court. *See:* *Schware v. Board of Bar Examiners of New Mexico, supra; Konigsberg v. State Bar of California,* 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 81 (1957); *Theard v. United States, supra; Gately v. Sutton, supra.*

Doe cannot invoke the provisions of § 1983 of the Civil Rights Act in federal district court so as to circumvent and avoid his obligation to seek direct review in the United States Supreme Court. The Colorado Supreme Court's jurisdiction both with respect to admission and disbarment proceedings has its source in Colo.R.Civ.P. 241(C). It is "original and exclusive" in relation to licensing and disciplinary proceedings. *People v. Buckles,* 167 Colo. 64, 453 P.2d 404 (Colo.1968).

In *Stringer v. Dilger,* 313 F.2d 536 (10th Cir. 1963) we stated that the Civil Rights Act was not enacted for the purpose of disciplining local law enforcement officials, and that only aggravated deprivations of personal rights guaranteed by the Constitution and laws of the United States create cognizable actions, i.e., illegal search and seizure, illegal arrest and assault, physical abuse while incarcerated, refusal to permit an accused to consult with an attorney, use of threats and intimidation to force a change of plea, etc. *See also:* *Marland v. Heyse,* 315 F.2d 312 (10th Cir. 1963).

In *Wells v. Ward,* 470 F.2d 1185 (10th Cir. 1972) we reviewed the occasion for enact-

ment of the original Civil Rights legislation. It was there noted that post Civil War conditions, primarily in the southern states, were such that Blacks and Union sympathizers were persecuted by the Ku Klux Klan without protection of state laws or state law enforcement agencies. These conditions generated federal legislation intended to provide a remedy to either overcome state laws or to provide a remedy where the state had elected not to do so.

In the course of recent years—but certainly not including the year 1976—the United States Supreme Court recognized and assumed subject matter jurisdiction in many previously uncharted areas involving affairs of or within the states, with like jurisdiction recognized in federal district courts and circuit courts of appeal. A few examples are: civil rights proceedings challenging state action terminating a teacher's employment contract when the teacher alleges that the termination was in reprisal for his exercise of protected First Amendment speech [*Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2513, 33 L.Ed.2d 570 (1972)]; denial of a state welfare recipient's receipt of welfare funds without benefit of certain due process procedural rights guaranteed the recipient under the Fourteenth Amendment [*Goldberg v. Kelly*, 397 U.S. 254, 89 S.Ct. 1469, 22 L.Ed.2d 751 (1970)]; and a state's revocation of parole without granting the parolee minimal procedural due process rights as guaranteed by the Fourteenth Amendment [*Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)].

Part II of this opinion refers to a series of opinions, primarily those rendered by the United States Supreme Court in 1976, which we believe reflect a pronounced restriction of subject matter jurisdiction in the federal courts relating to Civil Rights Acts challenges aimed at actions taken by state officers or agents. The trend is reflective of the concern expressed by this observation in *Freeman v. Flake*, 448 F.2d 258 (10th Cir. 1971):

> . . . The proliferation of litigation resulting from the expanded use of § 1983 is apparent to anyone familiar with the reported decisions of the courts of the United States. The existence of the § 1983 remedy does not require that federal courts entertain all suits in which unconstitutional deprivations are asserted
>
> . . .

448 F.2d, at 261.

## II.

Certain United States Supreme Court opinions, particularly some rendered this year, one of which is closely akin to the case at bar, lend persuasive weight to the proposition that federal court subject matter jurisdiction in the civil rights area challenging actions taken under color of state law has been restricted in scope.

The trend may have been foreordained following *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). These decisions held that a federal district court could not enjoin a pending state court criminal prosecution enforcing an obscenity statute in recognition of the right of the ". . . state courts to try cases free from interference by federal courts" 401 U.S., at 43, 91 S.Ct. at 750. *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) expanded the *Younger—Samuels* doctrine to prohibit federal court action in those cases where a party is charged in a state criminal proceeding relating to the same subject matter involved in a pending federal suit where there has been no answer then filed in the federal proceeding. *Hicks* held that the *Younger* rule applied ". . . where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court . . ." 422 U.S., at 349, 95 S.Ct. at 2292. To be sure, the restraints exercised cannot be placed in any specific doctrinary category. They do, however, generally seem to blend with nomenclature such as "abstention," "equitable restraint," "lack of subject matter jurisdiction," or "in recognition of the

principle of comity" in our system of federalism with pronounced reluctance to permit federal court interference with state court proceedings and/or state actions involving a federal constitutional claim.

One 1976 opinion is closely akin to the case at bar. The federal courts were denied subject matter jurisdiction in a civil rights challenge brought by a disciplined member of the bar of New York both in regard (a) to the constitutionality of the state's general rules and regulations governing disciplinary actions and the administration thereof and (b) to the alleged denial of a full, fair and meaningful opportunity to be heard by the statutory trier-of-fact. The United States Supreme Court *summarily affirmed,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) the three-judge opinion in *Mildner v. Gulotta,* 405 F.Supp. 182 (1975, USDC E.N. Y.), wherein the Court, two to one, upheld the New York procedure whereby disciplinary complaints against attorneys are first made to the Appellate Division of the Supreme Court, which in turn, if the case so warrants, refers the charges to a referee who conducts a hearing and prepares a report setting forth his findings of fact and conclusions of law which is then filed with the Appellate Division, together with a transcript. The parties then make motions to affirm or disaffirm the referee's findings. *The Appellate Court may then confirm or disaffirm the report in whole or in part, may make new findings with or without additional testimony and may order a new hearing. Usually, the Appellate Division does not take new evidence or hear oral arguments. In practice, the Appellate Division issues a summary statement either affirming or disaffirming the referee's findings, without giving any reasons for its decisions.* Following a suspension or disbarment order from the Appellate Division, the attorney involved is afforded an appeal as of right to the New York Court of Appeals but only with respect to issues of law involving construction of the state or federal constitutions, or in a case in which an Appellate Division justice dissents. The challenge made in *Mildner* was that this procedure denies a disciplined attorney a full, fair and meaningful opportunity to be heard by the statutory trier-of-fact, together with the full scope of appellate review afforded all other "litigants" and particularly all other "professionals" whose licenses to practice are revoked or suspended. *The majority held that there is no constitutional infirmity in the entire procedure and specifically that there is no denial of fundamental fairness by not providing the accused attorney or his witnesses the right to be heard personally by the body charged with the adjudicative responsibility.* The dissenting judge opined that the New York procedures denied due process of law to disciplined attorneys in failing to provide a meaningful hearing before the trier-of-fact when the credibility of witnesses is involved and by failure to provide opportunity to present oral arguments before the final adjudicative body.

Other 1976 opinions of the United States Supreme Court which we interpret as effecting restrictions upon the subject matter scope of federal court jurisdiction in civil rights suits challenging state actions are:

(1). *Rizzo, et al. v. Goode, et al.,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). This case involved two class action suits brought under 42 U.S.C.A. § 1983 against the Mayor of Philadelphia, the Police Commissioner and others, alleging a pervasive pattern of illegal and unconstitutional police mistreatment of minority citizens. The Supreme Court rejected the District Court's flat pronouncement that a federal court's legal power to "supervise the functions of the police department . . . is firmly established" and held that when a plaintiff seeks to enjoin the activity of a state governmental agency or official, the frame of reference must recognize the system of federal courts representing the nation, subsisting side by side with 50 state judicial, legislative and executive branches dictating that:

.  .  .  even where the prayer for injunctive relief does not seek to enjoin the state criminal proceedings themselves, we have held that the principles of equity nonetheless militate heavily against the

grant of injunction except in the most extraordinary circumstances. In *O'Shea v. Littleton, supra,* 414 U.S. [488] at 502, 94 S.Ct. [669] at 679, 38 L.Ed.2d 674, we held that "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized in the decisions previously noted." And the same principles of federalism may prevent the injunction by a federal court of a state civil proceeding once begun. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

\* \* \* \* \* \*

. . . We think these principles likewise have applicability where injunctive relief is sought not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments . . . Indeed, in the recent case of *Mayor v. Educational Equality League,* 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974), in which private individuals sought injunctive relief against the Mayor of Philadelphia, we expressly noted the existence of such considerations, saying "there are also delicate issues of federal—state relationships underlying this case."

96 S.Ct. at pp. 608

(2). *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Court held that state prosecutors are absolutely immune from suit while pursuing their prosecutorial activities.

(3). *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The Court held that a § 1983 and Fourteenth Amendment due process claim could not prevail in an action brought by Davis against Paul, a Chief of Police, who had circulated a photographic "flyer" of Davis bearing his name and identifying him as an "active shoplifter," which proved to be untrue. The Court held that the infliction by state officials of a "stigma" to one's reputation, standing alone, apart from some more intangible in-

terest such as employment, recognized and protected by state law, or some interest guaranteed in one of the provisions of the Bill of Rights which has been "incorporated" into the Fourteenth Amendment, does not constitute "liberty" or "property" interests sufficient to invoke the procedural protections of the Due Process Clause of the Fourteenth Amendment.

(4). *Kelley Commissioner v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). This case involved a § 1983 action by a policeman to a hair-length regulation promulgated by the county police department, wherein the policeman sought declaratory and injunctive relief. The Fourteenth Amendment was invoked on the grounds that the regulation denied the policeman his right of free expression under the First Amendment and his guarantees of due process and equal protection under the Fourteenth Amendment in that it was "not based upon the generally accepted standard of grooming in the community" and that it placed "an undue restriction" upon his activities. The District Court dismissed the complaint and cause of action. The Court of Appeals reversed, holding that the fact that a police force is organized "with a centralized administration and a disciplined rank and file for efficient conduct of its affairs" did not foreclose the claim, but instead bore only upon "the existence of a legitimate state interest to be reasonably advanced by the regulation." The Supreme Court reversed the Court of Appeals, holding that the challenged regulation did not violate any right guaranteed the policeman under the United States Constitution. The Court stated, *inter alia*:

. . . the hair-length regulation cannot be viewed in isolation, but must be rather considered in the context of the county's chosen mode of organization for its police force . . . The promotion of safety of persons and property is unquestionably at the core of the State's police power . . . Choice of organization, dress, and equipment for law enforcement personnel is a decision entitled to the same sort of presumption of legis-

lative validity as are state choices designed to promote other aims within the cognizance of the State's police power . . . [cases cited] . . . Having recognized in other contexts the wide latitude accorded the government in the "dispatch of its own internal affairs," *Cafeteria Workers v. McElroy,* 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230, 1237 (1961), we think Suffolk County's police regulations . . . are entitled to similar weight.

425 U.S., at 247, 96 S.Ct. at 1445.

(5). *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). This case involved a § 1983 suit brought by a city policeman seeking reinstatement and back pay following his termination without a hearing. The city manager had informed him privately that his dismissal was based on failure to follow orders, poor attendance at police training classes, causing low morale, etc. The policeman alleged that his employment status was a property interest protected by the Due Process Clause of the Fourteenth Amendment and that inasmuch as the explanation for his termination was false, he was also deprived of an interest in liberty protected by the Due Process Clause. The Supreme Court denied the relief requested in holding, (a) that the policeman had no property interest in employment because the state law did not provide him with an enforceable expectation of continued employment, by statute or contract, and thus his discharge did not deprive him of a property interest protected by the Fourteenth Amendment, and (b) that he was not deprived of a federally protected liberty interest, even assuming that the oral reasons given for his discharge are false, because the reasons were not publicly stated and accordingly could not form the basis for impairment of good name, reputation, honesty, or integrity. Of particular interest is this dicta:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mis-

takes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error . . . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

96 S.Ct. p. 2080.

Although the subject matter did not involve the Civil Rights Acts, we see the Supreme Court's opinion in *Stone v. Powell,* 429 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) as indicative of a growing trend toward a "hands off" attitude by the federal courts involving subject matter jurisdiction relating to challenges of state actions or inactions. There the Court held that where a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. While adhering to the view that the court-made exclusionary rule continues to remain in force and effect at state criminal trials and in its enforcement on direct appeals of state court convictions, the Court said:

> But the additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs . . . There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral

proceedings often occurring years after the incarceration of the defendant.

96 S.Ct. at p. 3051.

WE AFFIRM.

BREITENSTEIN, Circuit Judge, concurring in result.

I concur in the result because I am convinced that the federal district court lacked subject matter jurisdiction. The Supreme Court of Colorado has exclusive jurisdiction over the admission to practice in the Colorado courts. In the exercise of that jurisdiction it denied to Doe the right to practice. No rule or regulation pertaining to admission of attorneys is attacked. Doe's sole claim is that in his particular situation the action of the Colorado Supreme Court denied his federal constitutional rights to due process and equal protection. The action of the Colorado court was judicial rather than administrative. A federal district court does not sit as an appellate court to review actions of a state supreme court. Doe's recourse was to petition the Supreme Court of the United States for certiorari review of the action of the state supreme court. See *Konigsberg v. State Bar of California,* 353 U.S. 252, 258, 77 S.Ct. 772, 1 L.Ed.2d 810.

SETH, Circuit Judge, concurring specially:

I concur in the conclusion that the trial court was correct in its dismissal of plaintiff's causes of action by reason of lack of jurisdiction as described by Judge Barrett, and based by him on *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342, *Gately v. Sutton,* 310 F.2d 107 (10th Cir.), and *MacKay v. Nesbett,* 412 F.2d 846 (9th Cir.).