Carlos DELGADO, John Edmonds, Walter D. Palmer, Miguel Rodriguez and Ann Wilson, Individually, and on behalf of a class of all others similarly situated,

v.

Desmond J. McTIGHE, Hon. Abraham H. Lipez, Justin M. Johnson, Marvin Comisky and John H. English, Sr., Individually and as Members of the Commonwealth of Pennsylvania, State Board of Law Examiners and Commonwealth of Pennsylvania State Board of Law Examiners.

Civ. A. No. 76–1206.

United States District Court, E. D. Pennsylvania.

Dec. 1, 1977.

Alan M. Lerner, and Howard Lesnick, Philadelphia, Pa., for plaintiffs.

Bernard G. Segal and James D. Crawford, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This class action[1] against the Commonwealth of Pennsylvania State Board of Law Examiners and its individual members was instituted by black and Puerto Rican law school graduates, each of whom has taken the Pennsylvania bar examination at least once. The plaintiffs allege that the grades they received would have been passing grades if the Bar Examiners had not on several occasions raised the minimum passing grade from its 1972 level. In 1972, the Board required an assigned grade of 130 or better on the Multistate Bar Examination (MBE), or a grade of 100 in the MBE and 50 on the essay portion, or a grade of 85 on the MBE and 65 on the essay: in subsequent years the Board elevated these grades. These changes, the plaintiffs contend, were done arbitrarily and with the intent to discriminate against black and Puerto Rican applicants to the Bar of the Supreme Court of Pennsylvania, in violation of the due process and equal protection clauses of the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1983.

The defendants have moved to dismiss the amended complaint contending:

1. The amended complaint fails to state a claim upon which relief can be granted under 42 U.S.C. §§ 1981 or 1983 because it fails to allege facts which would indicate that the Board has violated any of the plaintiff's constitutional rights.

2. The amended complaint fails to state a claim upon which relief can be granted against the Board under 42 U.S.C. § 1983 because the Board is not a "person" within the meaning of that provision.

3. The amended complaint fails to state a claim upon which relief can be granted under Title VII of the Civil Rights Act of 1964 because the Board is not an "employer" or "employment agency" within the meaning of that Act.

4. The action is premature because plaintiffs have not presented to the Supreme Court of Pennsylvania their claims that they should be admitted to the bar of that court.

5. Plaintiffs have failed to join the Supreme Court of Pennsylvania or its Justices, who are indispensable parties to this action.

6. Until this matter is presented to the Supreme Court of Pennsylvania, this Court should abstain from hearing the case under principles of comity and federalism.

For a clearer understanding of the plaintiffs' allegations we shall first review the procedures pursuant to which applicants are admitted to the Pennsylvania bar. Rules 7 through 16 of the Rules of the Supreme Court of Pennsylvania[2] were promulgated by that court pursuant to its constitutional grant of authority.[3] These rules provide

---

1. This suit has not yet been certified as a class action pursuant to F.R.Civ.P. 23.

2. Since the filing of this suit, the rules have been redesignated as the Pennsylvania Bar Admission Rules, and several provisions have been modified. However, these changes in no way affect the claims raised in this case.

3. The Pennsylvania Constitution, Article 5, Section 10(c) provides in pertinent part:

The Supreme Court shall have the power to prescribe general rules governing practice,

two procedures pursuant to which graduates of accredited law schools may be admitted to the bar.[4] One applies to applicants of good character who have been admitted to the bar of another state and have either practiced law outside of Pennsylvania, or taught law school, for at least five years. Rule 9 allows such attorneys, upon submission of proof of their status, to be recommended by the State Board of Law Examiners to the Pennsylvania Supreme Court for admission to the bar. The court reviews the individual applications and determines whether to admit the candidates. *In re Denenberg,* No. 169 Misc.Dkt. No. 20 (Pa.S.Ct. July 30, 1974).

The other procedure for admission to the bar (Rule 8) requires graduates of accredited law school to fill out an application which they must send to the State Board of Law Examiners, together with the names of three reputable citizens who are acquainted with the applicant. If these requirements are satisfactorily met, the Board then permits the candidate to take an examination, which is prepared, administered and graded by the Board. The Pennsylvania Supreme Court Rules do not provide any guidelines with respect to the examination or its grading. If the applicant received a passing grade as determined by the Board, the Board then issues to the applicant a certificate pursuant to Rule 12. Upon submission of the Rule 12 certificate, together with a written motion for admission from a member of the Pennsylvania bar and the required oath of admission, the Prothonotary of the Pennsylvania Supreme Court then certifies the applicant's admission to the bar of that court.

> procedure and the conduct of all courts . . including the power to provide for . . . admission to the bar and to practice law . . . .

4. Those who are not graduates of an accredited law school may be admitted if they "have acquired a legal education which in the opinion of the State Board is the equivalent." Rule 8(C)(2). *Accord,* Rule 9(B)(2).

5. Amended complaint ¶ 16 at 7.

6. To their motion to dismiss, the defendants attached an affidavit. As pointed out by Judge Hunter in *Mortensen,* 549 F.2d at 891,

The thrust of the plaintiffs' amended complaint is that (1) the State Board of Bar Examiners has raised the passing grade each year since 1972; (2) these actions by the Board have been arbitrary and have had a disparate adverse impact on the ability of black and Puerto Rican examinees to obtain a passing grade; (3) the Board knew that a disproportionately large percentage of black and Puerto Rican examinees would not obtain a passing grade if there was a slight increase in the passing grade; (4) the passing grade determined by the Board for 1972 more accurately distinguished between qualified and unqualified applicants; (5) there was no justification, reasonably related to the aim of distinguishing between qualified and unqualified examinees, supporting the Board's decision to raise the passing grade from its 1972 level; and (6) each time since 1972 that the Board raised the passing grade, "the Board knew, and therefore intended, that the effect of such changes in the passing grade/grades would be to reduce the number and percentage of black and Puerto Rican examinees passing the examination without materially improving the examination's ability to distinguish between qualified and unqualified entry-level lawyers."[5]

In connection with a motion to dismiss,[6] all of the well pleaded complaint must be taken as true and must be construed in the light most favorable to the plaintiffs. *Helstoski v. Goldstein,* 552 F.2d 564, 565, (3d Cir. 1977); *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 890–91 (3d Cir. 1977). This being a F.R. Civ.P. 12(b)(6) motion, the motion can be

> [i]f the court considers matters outside the pleadings before it in a 12(b)(6) motion, the [12(b)(6) motion] will automatically be converted into a Rule 56 summary judgment procedure. Here there are further safeguards for the plaintiff[s]: in addition to having all of plaintiff's allegations taken as true, with all their favorable inferences, the trial court cannot grant a summary judgment unless there is no genuine issue of material fact.

We have not considered the defendants' affidavit, and, thus, the defendants' 12(b)(6) motion has not been converted into a Rule 56 motion.

granted only if the Court finds that "even were plaintiff[s] to prove all [of their] allegations, [they] would be unable to prevail." *Mortensen, supra* at 891.

*Allegation of Discriminatory Purpose in Actions Based on 42 U.S.C. §§ 1981 and 1983.*

█ The defendants' first ground for requesting the dismissal of plaintiffs' amended complaint is that it does not state a claim upon which relief can be based under 42 U.S.C. §§ 1981 and 1983, because discriminatory purpose has not been adequately alleged. In this case the plaintiffs' original complaint was filed on April 16, 1976. A month and a half later the United States Supreme Court handed down its opinion in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), which delineated the requirements for discrimination claims based on 42 U.S.C. § 1981. The defendants promptly filed a motion to dismiss, contending in part that the complaint did not allege discriminatory purpose, as required by the *Washington* court. The defendants' motion to dismiss was withdrawn after it was agreed at a conference that plaintiffs could file an amended complaint. Having reviewed the amended complaint and, in particular, paragraph 16, *supra*, we find that discriminatory intent is now adequately averred, and that in all other respects the plaintiffs have alleged facts sufficient to withstand a motion to dismiss for failure to state a claim pursuant to 42 U.S.C. §§ 1981 and 1983.[7] *Washington v. Davis, supra* at 242, 96 S.Ct. 2040; *Resident Advisory Board v. Rizzo*, 564 F.2d 126, 140 (3d Cir. 1977); *Richardson v. Pennsylvania Department of Health*, 561 F.2d 489, 492, (3d Cir. 1977).

*The State Board of Law Examiners Not a "Person" Within the Meaning of 42 U.S.C. § 1983.*

█ Defendants' second contention is that the amended complaint fails to state a claim upon which relief can be granted against the State Board of Law Examiners under 42 U.S.C. § 1983 because the Board is not a "person" within the meaning of that provision. As heretofore pointed out, the Pennsylvania Constitution grants to the Supreme Court of Pennsylvania the power to provide for admission to the bar. Pursuant to this constitutional authorization the Supreme Court has delegated certain of its responsibilities in connection with the bar examinations to the State Board of Law Examiners, whom it appoints. In view of the United States Supreme Court's holding in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and the cases hereinafter cited, the conclusion appears inescapable that the Board is not a "person" within the meaning of 42 U.S.C. § 1983. Nevertheless, the individual members of the Board are "persons" under the statute. *Thompson v. Burke,* No. 73–2085 at 1 (3d Cir. 1977) (Pennsylvania Board of Parole and Pardons is not a "person" within the meaning of 42 U.S.C. § 1983); *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (New Jersey Prison Medical Department is not a "person"); *Lehman v. City of Pittsburgh*, 474 F.2d 21, 22 (3d Cir. 1973) (Civil Service Commission of Pittsburgh is not a "person"); *Educational Equality League v. Tate*, 472 F.2d 612, 614 n. 1 (3d Cir. 1973) (Nominating Panel appointed by the city mayor is not a "person"); *Madden v. New Jersey State Parole Board*, 438 F.2d 1189, 1190 (3d Cir. 1970) (New Jersey State Parole Board is not a "person"); *Zuckerman v. Appellate Division*, 421 F.2d 625, 626 (2d Cir. 1970) (Appellate Division of the Supreme Court of New York is not a "person"); *United States ex rel. Gittlemacker v. County of Philadelphia*, 413 F.2d 84, 86 (3d Cir. 1969) (City-owned hospital is not a "person").

---

7. The defendants also urge the dismissal of the complaint because "actions which are motivated in part by intentional discrimination *are not always* invalid." This is true but inapposite, since a motion to dismiss under F.R.Civ.P. 12(b)(6) can only be granted if it appears "beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1956).

*Allegation That Applicants to Bar Were Discriminated Against By Board's Grading of Bar Examinations Not Within Purview of Title VII.*

The defendants' third contention is that the claim asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, should be dismissed on the ground that the Board is not an "employer" or an "employment agency" within the meaning of the Act. Although the Board is clearly not an "employment agency", even under the broad definition of Title VII,[8] the plaintiffs correctly point out that the Board does employ a sufficient number of people to qualify as an employer under the Act.[9] The issue, however, is whether Title VII is applicable considering the relationship between the Board and the applicants for admission to the bar. Title VII prohibits discrimination in employment by employers, employment agencies and labor unions. It provides in pertinent part:

§ 2000e–2. Unlawful employment practices—Employer practices

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

In applying the above quoted portion of Title VII, which prohibits discrimination by employers, the courts have determined that there must be either an employer-employee relationship between the parties or a prospective one. *See, Hackett v. McGuire,* 445 F.2d 442 (3d Cir. 1974); *Kyles v. Calcasieu Parish Sheriff's Department,* 395 F.Supp. 1307 (W.D.La.1975). Certainly this requirement is not present here. Plaintiffs contend, however, that the scope of Title VII has been expanded to encompass those cases in which the defendant has directly interfered with an individual's employment opportunities. In support of their contention, the plaintiffs have called the Court's attention to *Sibley Memorial Hospital v. Wilson,* 160 U.S.App.D.C. 14, 488 F.2d 1338 (1973) and *Puntolillo v. New Hampshire Racing Commission,* 375 F.Supp. 1089 (D.N.H.1974). In *Sibley,* the plaintiff-appellee, Mr. Wilson, was a male private duty nurse who sued Sibley Memorial Hospital for violating Title VII. The plaintiff was not an employee of the hospital, but rather was listed with an independent nurses' registry. Patients at the defendant-hospital who re-

---

8. Section 2000e. reads as follows:

For the purposes of this subchapter—

(a) The term "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, or receivers.

(b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

(c) The term "employment agency" means any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person.

9. See, *supra,* note 8.

quired the services of a private duty nurse would ask the hospital to call the registry, whose job was to match the request with the name of an available nurse. The nurse would then be informed of the assignment and report directly to the patient's room. On two occasions, when the requesting patient was female and Mr. Wilson was selected by the registry, the hospital's supervisory nurses refused to let him report to the patient. The court, in holding that the relationship between Mr. Wilson and Sibley Memorial Hospital was sufficient to bring the case within the purview of Title VII, said:

> [w]e think it significant that the Act has addressed itself directly to the problems of interference with the direct employment relationship by labor unions and employment agencies—*institutions which have* not a remote but *a highly visible nexus with the creation and continuance of direct employment relationships* between third parties. On the facts as alleged . . . [the hospital] is so circumstanced, and its daily operations are of such a character as *to have such a nexus to the third parties* in this case; and we think neither the spirit nor, more essentially, the language of the Act leave it outside the reach of Title VII. 160 U.S.App.D.C. at 18, 488 F.2d at 1342 (emphasis added).

In *Puntolillo*, the plaintiff claimed that the defendants the New Hampshire Racing Commission and the New Hampshire Trotting and Breeding Association, Inc., had unlawfully interfered with his employment opportunities by discriminating against him in violation of Title VII. Specifically, he alleged that he was denied a license to race at Rockingham Park because of his Italian national origin. The defendants moved to dismiss for failure to state a claim upon which relief could be granted under Title VII, since there was no employment relationship between the parties. The court denied the motion and concluded that there was an employment relationship between

the parties within the meaning of Title VII. 390 F.Supp. 231, 233 (D.N.H.1975).

■ We are not persuaded that either *Sibley* or *Puntolillo* brings the relationship between bar applicants and the Board within the purview of Title VII. Neither the language of the Act nor its legislative history indicate that Congress ever intended Title VII to apply in the situation wherein applicants for admission to the bar allege discrimination in the grading of bar examinations. Furthermore, the courts which have been confronted with this specific issue have held that Title VII does not apply. *Woodard v. Virginia Board of Bar Examiners*, 420 F.Supp. 211, 212 (E.D.Va.1976); *Parrish v. Board of Commissioners of Alabama State Bar*, 533 F.2d 942, 949 (5th Cir. 1976). *See also, Richardson v. McFadden*, 540 F.2d 744, 747 (4th Cir. 1976); *Tyler v. Vickery*, 517 F.2d 1089, 1096 (5th Cir. 1975); *Pacheco v. Pringle*, No. C–5219 at 7–8 (D.Colo. June 19, 1975).

*Theard Doctrine Not Applicable Where Complaint Claims State Board Discriminated By Changing The Passing Grade.*

The defendants' fourth contention is that this action is premature in that the plaintiffs should first present to the Supreme Court of Pennsylvania their claims that they should be admitted to the bar of that court.[10] In making this contention, the defendants are apparently relying on the so-called *Theard* doctrine, which is the policy of abstention attributed to *Theard v. United States*, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). As the Ninth Circuit explained in *McKay v. Nesbett*, 412 F.2d 846 (9th Cir. 1969),

> [l]anguage in *Theard v. United States*, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957) . . . support[s] the rule that orders of a state court relating to the admission, discipline, and disbarment of members of its bar may be reviewed only by the Supreme Court of the United

**10.** Rule 14 provides in part: "With the exception of the decision of the State Board that an applicant has passed or failed a bar examina-

tion, any order or ruling by the State Board may be reviewed by this Court . . . ."

States on certiorari to the state court, and not by means of an original action in a lower federal court.

Accord, Doe v. Pringle, 550 F.2d 596 (10th Cir. 1976); Feldman v. State Board of Law Examiners, 438 F.2d 699 (8th Cir. 1971); Chaney v. State Bar of California, 386 F.2d 962 (9th Cir. 1967); Nordstrom v. New Mexico Supreme Court, No. 76–962 (D.N.M. 1976). For illustrations of this procedure, see Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957) and Schware v. Board of·Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). For cases applying the Theard doctrine to a state supreme court's decision to disbar, see Ginger v. Circuit Court for County of Wayne, 372 F.2d 621 (6th Cir. 1967); Clark v. Washington, 366 F.2d 678 (9th Cir. 1966); Gately v. Sutton, 310 F.2d 107 (10th Cir. 1962); Lenske v. Sercombe, 266 F.Supp. 609 (D.Or.1967). However, the Theard doctrine is not applicable to the allegations in this complaint. As pointed out by the Tenth Circuit Court in Doe v. Pringle, 550 F.2d 596, 597 (10th ·Cir. 1976),

> there is a subtle but fundamental distinction between two types of claims which a frustrated bar applicant might bring to federal court: [one] is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission; [the other] is a constitutional challenge to the state's general rules and regulations governing admission.

■ It is now well established that where a group of plaintiffs challenge the constitutionality of a general bar admission rule promulgated by a committee appointed by the state supreme court, the United States district courts hear the claims even though the matter was never presented to the highest court of the state. As stated by Judge Friendly in Law Students Civil Rights Research Council, Inc. v. Wadmond, 299 F.Supp. 117, 123–24 (S.D.N.Y.1969), aff'd 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed.2d 749 (1971):

> [when the] plaintiffs do not challenge a state court's disposition of an individual case, but attack [on constitutional grounds] . . . the rules and regulations promulgated and administered by the [defendants], . . . the alleged infringement of [the constitutional rights] of [the plaintiffs] cannot be dissipated by the processing of particular individuals' applications for admission to the bar. . . . [This] make[s] appropriate our consideration of equitable relief even though the defendants would be immune from liability in damages for their administration of the challenged procedures [citing cases]. To hold otherwise would be to leave without a remedy a significant class of deprivations of federal rights under color of state law that Congress intended to redress under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

Accord, Richardson v. McFadden, 540 F.2d at 746 n. 2; Pettit v. Gingerich, 427 F.Supp. 282 at 285–286, 287 (D.Md.1977); Shenfield v. Prather, 387 F.Supp. 676, 679 n. 4 (N.D. Miss.1974); Lipman v. Van Zant, 329 F.Supp. 391, 394–97 (N.D.Miss.1971); Keenan v. Board of Law Examiners of State of North Carolina, 317 F.Supp. 1350, 1353–56 (E.D.N.C.1970). See also, Richardson v. McFadden, 540 F.2d 744 (4th Cir. 1976); Woodard v. Virginia Board of Bar Examiners, 420 F.Supp. 211 (E.D.Va.1976); Singleton v. Louisiana State Bar Association, 413 F.Supp. 1092 (E.D.La.1976); Lewis v. Hartsock, No. 73–16 (E.D.Ohio 1976).

*The Supreme Court Of Pennsylvania Not An Indispensable Party To This Action.*

The defendants' fifth basis for urging the dismissal of the amended complaint is that the plaintiffs have failed to join the Supreme Court of Pennsylvania or its justices. The defendants point out that the Pennsylvania Supreme Court is responsible for prescribing the rules governing admission to the bar under Section 10(c) of Article V of the Pennsylvania Constitution, and that no person is admitted without the action of the Supreme Court itself. They also request that we follow Judge Higginbotham's recent decision in Ricci v. State Board of Law Examiners, 427 F.Supp. 611 (E.D.Pa. 1977). In Ricci, the plaintiff was an attor-

ney who had been a member of the bar of the District of Columbia since 1965. In 1968 he moved to Pennsylvania, although he continued to appear before various federal agencies in Washington, D. C. In 1972 and 1976 he applied for admission to the Pennsylvania bar under Rule 9. The State Board of Law Examiners refused to recommend him either time, stating that the plaintiff "clearly had not practiced law outside of Pennsylvania for at least 5 years as required by the Rules of the Supreme Court governing admission to the bar . . . ." 427 F.Supp. at 615. Ricci appealed these decisions to the Pennsylvania Supreme Court which denied each appeal without opinion. He then brought suit in federal district court against the State Board of Law Examiners on the grounds that Rule 9(A)(2), as interpreted by the Board, violated both the due process and the equal protection clauses of the Fourteenth Amendment to the Federal Constitution. The defendants moved for summary judgment, asserting in part that the Pennsylvania Supreme Court or its justices were indispensable parties and therefore should have been joined as defendants.

Judge Higginbotham found not only that the Board of Law Examiners had merely been enforcing the Pennsylvania Supreme Court's rule when it refused to recommend Ricci, but also that the relief Ricci was really requesting, namely, admission to the bar, could not be granted in a suit solely against the Board, especially when the Supreme court had twice affirmed the Board's denial of his application. Thus he found that the Supreme Court was an indispensable party. In fact, he stated that "[t]he State Board of Law Examiners, which lacks authority to promulgate or change rules governing admission to the bar, is not an appropriate party to this suit." 427 F.Supp. at 615.

Even more recently, the late Judge Gorbey was presented with a virtually identical case challenging Rule 8(C)(2) of the Rules of the Pennsylvania Supreme Court. He held that

[t]he pro se complaint, while it aims its alleged constitutional infirmities at the action of the State Board of Law Examiners, must nevertheless be regarded as an attack on the Supreme Court of Pennsylvania since it affirmed the action of the State Board, thereby judicially deciding that the State Board's interpretation of Rule 8(c)(2) was correct. In substance, therefore, plaintiff is here attacking on constitutional grounds the action of the Supreme Court of Pennsylvania in enforcing its own rule.

It appears, therefore, that the State Board of Law Examiners is not an appropriate party to this suit and that the Supreme Court of Pennsylvania would be an indispensable party, assuming a jurisdictional basis for such a suit.

*Murphy v. Pennsylvania Board of Law Examiners*, No. 77–458 at 3 (E.D.Pa. March 29, 1977).

In both *Ricci* and *Murphy*, the rule being challenged had not only been promulgated by the Pennsylvania Supreme Court, but the court had approved the Board's application of the rule. The complaint before this Court challenges the passing grades established not by the Pennsylvania Supreme Court but by the State Board of Law Examiners. Moreover, other federal courts that have been confronted with the question at hand have not required the state supreme court to be joined. As Judge Friendly stated in *Law Students, supra* at 123–24:

[when the] plaintiffs do not challenge a state court's disposition of an individual case, but attack [on constitutional grounds] . . . the rules and regulations promulgated by the [defendants] . . . . There is no practical obstacle to adjudication of the constitutionality of this procedure in the absence of the Court or its members.

In *Richardson, Pettit, Lewis* and *Woodard* (cases cited *supra*), where similar issues were litigated, joinder of the state's highest court was not required.

It is therefore our determination that the Supreme Court of Pennsylvania is not an

indispensable party to this action. However, should it appear at a later date that complete relief cannot be afforded without the court or its justices being a party to this action, we shall at that time consider a motion to join them pursuant to F.R.Civ.P. 19.

*This Court Should Not Abstain From Hearing This Case.*

 The defendants' sixth and final ground for dismissing the complaint is that this court should abstain from hearing the case under principles of comity and federalism. The only case cited by the defendants in support of this proposition which we have not already discussed in this memorandum is *Gipson v. Supreme Court of New Jersey*, 558 F.2d 701 (3d Cir. 1977). In *Gipson*, the plaintiff was a member of the bar of New Jersey who was under temporary suspension for failure to supply documents subpoenaed in connection with an ethics committee investigation of his conduct. He filed an action in federal district court, demanding that the suspension be lifted and New Jersey's system of attorney discipline be declared unconstitutional. The action was dismissed. Our Third Circuit affirmed the dismissal of the action on the ground that "[t]he traditional power of the state courts to establish standards for members of their bars and to discipline them . . . suggests that incursions by federal courts *into ongoing disciplinary proceedings* would be peculiarly disruptive of notions of comity." At 704 (emphasis added).

In the action before this court there is no ongoing state proceeding, nor are we concerned with a state disciplinary matter. In denying abstention in *Law Students, supra* at 124, the court stated:

> [the] contention is [raised] that admission to the bar is so peculiarly a matter of state concern that its resolution should be left to the state courts, subject, of course, to review by the Supreme Court. But that Court has given short shrift to similar claims in matters, equally of state concern, such as education, *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct.

1433, 10 L.Ed.2d 622 (1963), and state employees, *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); *Keyishian v. Board of Regents*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). *Accord, Pettit, supra* at 285–286.

Accordingly, the Court will enter an order granting the defendants' motion to dismiss the plaintiffs' claim against the State Board of Law Examiners based on 42 U.S.C. § 1983; granting defendants' motion to dismiss the plaintiffs' claim against all defendants based on Title VII of the Civil Rights Act of 1964; and in all other respects, denying the defendants' motion.