J. Kenneth LOWRIE, Plaintiff,

v.

Joseph H. GOLDENHERSH, et al., Defendants.

No. 80C436.

United States District Court, N. D. Illinois, E. D.

Feb. 26, 1981.

On Motion To Reconsider July 2, 1981.

Sheldon T. Zenner, Michael L. Shakman, Krupp & Miller, Chicago, Ill., for plaintiff.

Herbert Lee Caplan, William J. Scott, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This case presents a challenge to one of the rules of the Illinois Supreme Court regulating admission to the Illinois bar. The practical question is whether the applicant is entitled to admission without taking the Illinois state bar examination. The rule in question, Illinois Supreme Court Rule 705(a)(1)[1] allows admission on a foreign license without examination, provided the applicant has practiced for five of the seven years immediately preceding his application in a state in which he has been licensed.

Plaintiff J. Kenneth Lowrie was admitted to the bar of the State of Michigan in 1969. Plaintiff practiced law as an Assistant United States Attorney in Michigan from 1969 until 1971. He then worked as a

---

1. The full text of Illinois Supreme Court Rule 705(a)(1) is as follows:

(a) Any person who has been admitted to practice in the highest court of law in any other State or territory of the United States or the District of Columbia may make application to the Board of Law Examiners for admission to the bar, without examination, upon the following conditions:

(1) The educational qualifications of the applicant are such as would entitle him to write the bar examination in this State at the time he seeks admission, and he has resided and actively and continuously practiced law in such other jurisdiction for a period of at least five years of the seven years immediately prior to making the application.

Special Attorney for the United States Department of Justice in St. Louis, Missouri, from 1971 until 1975. From 1975 until 1977 plaintiff was assigned to the Organized Crime Strike Force of the Department of Justice in Springfield, Illinois. From 1977 until the present, he has served in the same capacity for the Department of Justice in Chicago, Illinois. At all times since his admission to the Michigan bar in 1969, plaintiff has practiced exclusively in the federal courts. Only the first two years of his practice were in Michigan. *See* Complaint, ¶ 9.

In 1979 plaintiff applied for admission to the Illinois bar under Rule 705(a)(1). He was denied admission on the obvious ground that he had not practiced for five of the preceding seven years in the State of Michigan. He then applied to the Illinois Supreme Court for a waiver of the requirements of Rule 705(a)(1), which request was denied. Plaintiff has now filed this suit in which he challenges the constitutionality of Rule 705(a)(1). Defendants have moved to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

■ Plaintiff first attacks the Illinois rule as a denial of equal protection of the law, in violation of the Fourteenth Amendment. He argues that the distinction between applicants who have practiced five years in the state in which they were licensed and those who have practiced for five years in a state in which they are not licensed bears no rational relation to the apparent objective of the Illinois rule of insuring the competence of attorneys entering Illinois practice without taking the bar examination. Plaintiff points out that had he worked for the Justice Department in Detroit for the past five years, he would clearly satisfy the requirement of the Illinois rule. Even though the work he has done for the Justice Department in Illinois is substantially similar to the work he might have done in Detroit, plaintiff has been denied admission under Rule 705(a)(1) because the actual location of his practice has not been in a state in which he is licensed.

To satisfy the equal protection requirement, the state must demonstrate that "it is conceivable that the [rule] bears a rational relationship to an end of government which is not prohibited by the Constitution." *Ktsanes v. Underwood*, 467 F.Supp. 1002, 1007 (N.D.Ill.1979) (three judge panel rejecting challenge to Illinois Supreme Court bar rule). *See also Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1959); *Murphy v. State Board of Law Examiners for the Commonwealth of Pennsylvania*, 429 F.Supp. 16, 18 (E.D.Pa.1977). While we agree with plaintiff that the Illinois rule bears no rational relationship to a state objective of insuring the competence of attorneys,[2] we do not find this to be the only permissible state objective. The state has a legitimate interest in preventing professional misconduct in the practice of law. We cannot say that a continuous period of employment in a jurisdiction which has granted a license and is concerned with the policing of its licensees is not some assurance of the character and fitness of those licensees when they apply for admission to another bar. While plaintiff has practiced for the past five years in one state, it is a state in whose courts he has not been licensed to practice[3] and which lacks authority to revoke or suspend the only license he holds. Although professional misconduct occurring in Illinois could be brought to the attention of the State of Michigan, this constitutes at best an attenuated disciplinary mechanism.

---

2. A member of the bar of Michigan (such as plaintiff here) who has resided for the last five years in Illinois and practiced in the federal courts in Illinois might know *more*, rather than less, about Illinois law than an individual practicing in his home state in compliance with Rule 705(a)(1).

3. Indeed, plaintiff's work is exclusively concerned with federal criminal law and the prosecution of cases in the federal courts. His position with the Justice Department precludes his acceptance of outside employment that might involve private clients or the state courts.

Plaintiff does not dispute the legitimacy of the state interest in the character and fitness of its attorneys, but argues that the identical objective is accomplished by Illinois Supreme Court Rule 705(a)(3), which provides that the applicant must prove his "good moral character and general fitness to practice law ..." and must submit a certificate from a judge of a court in the state in which he is licensed attesting to his membership in good standing and admission to the bar of that state. Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss at 3. *See also* Exhibit C, ¶ 12 to Plaintiff's Complaint. However, as discussed above, we do not agree that these two rules are duplicative: 705(a)(3) assumes that the state has had an opportunity to observe and police the professional conduct of the applicant; 705(a)(1) insures that the state has had that opportunity. In addition, the fact that alternative, or less restrictive, measures might exist or be devised to effectuate a state's legitimate purpose is irrelevant. "Legislation need not deal with all phases of a problem in the same way, so long as the distinctions drawn have some basis in practical experience." *South Carolina v. Katzenbach*, 383 U.S. 301, 331, 86 S.Ct. 803, 820, 15 L.Ed.2d 769 (1966). *See also McGinnis v. Royster*, 410 U.S. 263, 276, 93 S.Ct. 1055, 1062, 35 L.Ed.2d 282 (1973).

■ Turning to plaintiff's next argument, we find his claim under the Supremacy Clause of Article VI of the United States Constitution to be insubstantial. It is argued that the Illinois rule discriminates against federal attorneys assigned to work in various states and effectively prevents them from pursuing their livelihood. However, plaintiff and others similarly situated are not prevented from practicing law in Illinois, but are simply required, at most, to take the same bar examination that most other applicants take. Plaintiff has not suggested any law of the United States, even expansively construed, which is contravened by the Illinois bar licensing requirements. The federal government has not undertaken any regulatory or licensing system for lawyers, whether or not they are federally employed. This function resides with the states. *See Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792–93, 95 S.Ct. 2004, 2015–16, 44 L.Ed.2d 572 (1975); *Whitfield v. Illinois Board of Law Examiners*, 504 F.2d 474, 477 (7th Cir. 1974).

■ Nor do we think the rule violates plaintiff's right to interstate travel to pursue his profession. The constitutional "right to travel" under the Equal Protection and Privileges and Immunities Clauses to the Constitution does not imply that a citizen "carries with him from state to state an absolute right ... to practice ... a profession ...." *Hawkins v. Moss*, 503 F.2d 1171, 1178–1179 (4th Cir. 1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975). Admission to practice in one state is not automatic admission to practice in the courts of another state. *Application of Wasserman*, 240 F.2d 213, 214–215 (9th Cir. 1956); *Hawkins v. Moss*, 503 F.2d at 1175–1176 ("licenses to practice law ... have no extraterritorial effect or value and can vest no right in the holder to practice law in another state."). The Supreme Court noted in *Shapiro v. Thompson*, 394 U.S. 618, 638 n.21, 89 S.Ct. 1322, 1333 n.21, 22 L.Ed.2d 600 that residency requirements to obtain a license to practice a profession are not necessarily penalties upon the exercise of the constitutional right of interstate travel. *See also Memorial Hospital v. Maricopa County*, 415 U.S. 250, 259 n.13, 94 S.Ct. 1076, 1082 n.13, 39 L.Ed.2d 306 (1974). We find that the requirement that an applicant to the Illinois bar reside and practice for a period in the state in which he is licensed is not so burdensome as to constitute a "penalty" against the exercise of the constitutional right to travel. *See Shapiro v. Thompson*, 394 U.S. at 634, 638 n.21, 89 S.Ct. at 1333 n.21 (denial of "basic necessities of life" found to be a penalty); *Dunn v. Blumstein*, 405 U.S. 330, 340–342, 92 S.Ct. 995, 1002–04, 31 L.Ed.2d 274 (1972) (absolute denial of right to vote); *Memorial Hospital v. Maricopa County*, 415 U.S. at 257–259, 94 S.Ct. at 1081–82 (right to "basic necessities of life," including non-emergency hospitalization and medical care).

■ We have no jurisdiction over the question of whether plaintiff qualifies for an exemption from the requirements of Illinois Supreme Court Rule 705(a)(1).[4] This is a matter for the Illinois Supreme Court, and its determination can be challenged only by a petition for certiorari to the United States Supreme Court. *Woodard v. Virginia Board of Bar Examiners*, 598 F.2d 1345, 1346 (4th Cir. 1979); *Doe v. Pringle*, 550 F.2d 596, 599 (10th Cir. 1976), *cert. denied*, 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); *Feldman v. State Board of Bar Examiners*, 438 F.2d 699, 704 (8th Cir. 1971). *Cf. Ktsanes v. Underwood*, 552 F.2d 740, 743 (7th Cir. 1977) (only the general validity of the Illinois bar rules can be raised in the lower federal courts).

The motion to dismiss is granted.

### ON MOTION TO RECONSIDER

Plaintiff has filed a motion to reconsider our Memorandum Opinion and Order of February 26, 1981 ("Mem. Op." or "Memorandum Opinion") dismissing this action. The filing of this motion has given us an opportunity to reassess the grounds for our earlier opinion. For reasons discussed below the motion to reconsider is denied.

Plaintiff presents a number of arguments for reconsideration, some of which are repetitive of arguments he presented at the earlier pleading stage. We remain unpersuaded by plaintiff's arguments.

First, plaintiff again argues that this court is not free to imply a concern for character and fitness as support for Rule 705(a)(1) since that purpose is expressly dealt with elsewhere in the same rule, Rule 705(a)(3). We addressed this issue in our Memorandum Opinion at 4–5. When applying the rational basis test, this court is free to uphold a classification based upon "a[ny] state of facts that reasonably can be conceived to constitute a distinction or difference in state policy...." *Allied Stores v. Bowers*, 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959). Professor Tribe notes that this deference to state objectives has operated "... quite apart from whether the conceivable 'state of facts' (1) actually exists, (2) would convincingly justify the classification if it did exist, or (3) has ever been urged in the classification's defense by those who either promulgated it or have argued in its support." L. Tribe, American Constitutional Law 996 (1978). The instant rule has even stronger support since it reasonably serves legitimate state interests in the majority of those cases to which it applies. *Cf. Vance v. Bradley*, 440 U.S. 93, 97, 110–12, 99 S.Ct. 939, 942, 949–50, 59 L.Ed.2d 171 (1979); *City of New Orleans v. Dukes*, 427 U.S. 297, 303–05, 96 S.Ct. 2513, 2516–2517, 49 L.Ed.2d 511 (1976); *Massachusetts Board of Retirement v. Murgia*, 430 U.S. 307, 316, 96 S.Ct. 2562, 2568, 49 L.Ed.2d 520 (1979); *Kotch v. Board of River Boat Pilot Commissioners*, 330 U.S. 552, 563, 67 S.Ct. 910, 915, 91 L.Ed. 1093 (1947). We emphasize that the burden is upon the plaintiff to show there is no conceivable basis upon which the regulation can be supported.

Plaintiff also construes our earlier opinion as holding that the Illinois rule bears no

---

**4.** The Illinois Board of Law Examiners and the Illinois Supreme Court have denied plaintiff's request for an exemption. Exemptions have been granted by other states in cases similar to this one. *See State Bar of Georgia v. Granoff*, 133 Ga.App. 316, 211 S.E.2d 165 (1974) (member of Massachusetts bar admitted to Georgia bar despite the fact that he practiced for past five years as an attorney for the Federal Trade Commission and the Federal Environmental Protection Agency *outside* the State of Massachusetts; nearly identical provision to Illinois Supreme Court Rule 705(a)(1) involved); *Application of Brewer*, 506 P.2d 676, 678–79 (Alaska Supreme Court 1973) (member of D.C. bar admitted to Alaska bar, having worked as a local district judge in Alaska, despite the fact that he did not satisfy Alaska Bar Rule II, § 2(d), requiring that he practice law in the state of his prior admission for five out of the previous six years before filing his application); *In re Lerch*, 280 N.Y. 74, 19 N.E.2d 788, 789 (1939) (in construing nearly identical foreign state residency requirement and granting admission to the N.Y. bar of a member of D.C. bar "who had not lived in Washington ... for five years," the N.Y. Court of Appeals indicated that "if within the five-year period the lawyer was employed in legal capacity by the Federal Government away from home, his temporary absence from his State might not count against him.").

rational relationship to *any* state objective of insuring the competence of attorneys. Upon re-reading the language in this section of our opinion, we can understand how plaintiff would arrive at this conclusion. It is not the interpretation we intended, however, and we take this opportunity to clarify and amend that portion of our earlier opinion.

To the extent that the Illinois rule attempts to insure that an attorney is knowledgeable in Illinois state law, there is no rational basis for the rule, and certainly none for its application in this case. *See* Mem. Op. at 6 n.2. However, competency in Illinois law is an issue distinct from the state's compelling interest in an applicant's general competency (*see Keenan v. Board of Law Examiners*, 317 F.Supp. 1350, 1361 (E.D.N.C.1970)), particularly when the applicant is an alien practitioner seeking admission without taking the bar examination. Indeed, to the extent that Canon 6 and Disciplinary Rule 6–101 of the Illinois Code of Professional Responsibility require that an attorney act competently in his practice, competency is crucial to questions of moral character and fitness, and is especially pertinent when the applicant is an experienced practitioner. When the bar examination, the usual test of competency for all other applicants, is waived as a requirement for admission, the state can look for alternative methods to insure that an applicant is competent. The Illinois requirement that an alien practitioner have practiced for an extended period of time in his licensing state provides for a reasonable means to discover factors bearing upon his competency, as discussed *infra* at text accompanying n.2 in our earlier opinion, Mem. Op. at 4, and the job of the licensing state to police an attorney is made simpler when the attorney practices in that state.

Second, we remain unpersuaded by plaintiff's references to cases in which a one-year residency requirement prior to admission to the state bar, or to the taking of the bar exam, has been held unconstitutional. *Lipman v. Van Zant*, 329 F.Supp. 391 (N.D. Miss.1971); *Webster v. Wofford*, 321 F.Supp. 1259 (N.D.Ga.1970); *Keenan v. Board of Law Examiners*, 317 F.Supp. 1350 (E.D.N.C.1970).[1] *See also State v. Pennoyer*, 65 N.H. 113, 18 A. 878 (1889), *cited in In re Day*, 181 Ill. 73, 80–81, 54 N.E. 646 (1899), in which an additional licensing fee for alien physicians who wished to practice in New Hampshire was held unconstitutional. These holdings are inapplicable to the instant case. A rule that requires one year's residency prior to admission to the bar, or which requires an alien practitioner to pay an additional fee for admission, discriminates against *all* alien practitioners as

---

**1.** Plaintiff cites these cases as holding that (1) any residency requirement for admission to the bar is unconstitutional, and (2) should this court find that a residency requirement may be constitutional, the five years required by Rule 705 is patently unreasonable in light of the fact that *Lipman, Webster* and *Keenan* all found one year to be unreasonable. Plaintiff misinterprets these cases which are, in any event, inapplicable to this case. *See* pp. 539–540 *infra.*

Although all three courts found that one year of in-state residency was an unreasonably long period of time in light of the state's interests, "[t]his is not to say that [the state] cannot require a reasonable period of residency prior to taking the bar examination." *Webster*, 321 F.Supp. at 1263. *Accord Lipman*, 329 F.Supp. at 401–03. As *Lipman* additionally makes clear, each particular residency requirement is to be judged on the basis of its effect upon those to whom it applies, and the weight of the state's interest in preserving the requirement.

As discussed *infra* at pp. 539–540, Rule 705 is of an entirely different nature than a requirement that mandates one year in-state residency for all applicants to the bar; its effect is less intrusive and discriminatory, and the state's interests are weightier.

We are also somewhat perplexed by plaintiff's argument that five years is too long a requirement. We have never understood plaintiff as objecting to the *length* of the requirement in Rule 705, or to the fact that the rule only permits consideration of the last seven years of practice. Rather, plaintiff has objected solely to the fact that the rule requires the five years of practice to be *in the licensing state* of the applicant. Plaintiff has not practiced in his licensing state for approximately 10 years. Therefore, plaintiff has no standing to attack the length of the residency requirement *per se*; any relief granted by this court on such a theory, e. g., shortening the requirement to one year of practice in the licensing state, would afford plaintiff no relief.

a group, some of whom may otherwise be as well qualified for admission as state residents. Such a rule presents a prima facie violation of the privileges and immunities clause of the United States Constitution, Article IV, § 2, (see *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948)), infringes upon a citizen's fundamental right to interstate travel, and is subject to more intensive scrutiny than merely "rational basis." *Toomer*, 334 U.S. at 396, 68 S.Ct. at 1162. Illinois, however, has the same requirements for all applicants who wish to be admitted to the bar. One of these requirements is the taking of the bar examination, but there is no in-state residency requirement. Rules 701, 704(a). The Illinois requirement that alien practitioners practice for five years in the state of their license is clearly not the type of residency requirement prohibited in *Lipman, Webster,* and *Keenan.* Rather, Rule 705 outlines the conditions under which privileged admission without taking the bar examination will be granted. To the extent that Rule 705 permits an alien practitioner to be admitted to the Illinois bar without sitting for the bar examination, the rule extends a privilege to alien practitioners not granted to residents and thereby discriminates *in favor of alien practitioners.* The rule does not favor residents over nonresidents; at most, it may discriminate within the class of alien practitioners, favoring those who have practiced for five years or more in the state of their license over those who have practiced there for less than five years. This is not a matter of equal protection such as would require strict scrutiny of Rule 705(a)(1).

Since Rule 705 does not discriminate against alien practitioners as a group, does not infringe upon a fundamental right (see Mem. Op. at 539–540) and does not invidiously discriminate against a sub-class of alien practitioners protected by the 14th Amendment, the proper standard for review, as discussed above, is whether there is any conceivable basis to support the rule. As we have noted, plaintiff has failed to meet his burden under this standard.

Finally, plaintiff's evidence that Michigan does manage to police some attorneys who are licensed in Michigan but practicing elsewhere does not satisfy plaintiff's burden of proof. Illinois could reasonably assume that the policing of attorneys is easier, more reliable and more effective when the attorney practices in the state in which he is licensed.[2] For example, it is probable that the clients of an attorney not practicing in Michigan would not know that the attorney is licensed in Michigan. Those clients would be less likely to bring the unethical conduct or incompetence of the attorney to the attention of the Michigan bar than would be the case if the attorney practiced in Michigan.

The motion for reconsideration is denied.

---

**2.** We recognize that this plaintiff does not fit the "worst case" model, *i. e.,* an attorney who has practiced in five jurisdictions in five years, making it difficult to assess either his character or his competency over a period of time. Lowrie has been subject to the authority of the federal government continuously for five years, which regulates the conduct of its attorneys pursuant to 5 U.S.C. § 2303. The circumstances of Lowrie's employment may satisfy those concerns which are the reasonable basis for Rule 705. Nonetheless, our review is limited to the general validity of the rule (*Ktsanes v. Underwood,* 552 F.2d 740, 743 (7th Cir. 1977), see also *Poats v. Given,* No. 80–2030 (N.D.Ill.6/10/81) (Slip Op.)), and the application of Rule 705 in the vast majority of cases is neither unreasonable nor unfair.

We have found that the application of the rule to Lowrie does not discriminate against him in a manner that violates the Fourteenth Amendment. To the extent that the application of the rule in Lowrie's case is unnecessary, we balance the interest of the state in preserving the rule against the hardship its application works upon Lowrie in this particular case. When balanced against the legitimacy of the state's concerns and the reasonableness of the rule's application in most cases within its sphere, the small burden upon Lowrie—taking the bar examination, as must all other applicants to whom the privilege of admission on a foreign license is not extended, including all residents of Illinois—does not justify striking down Rule 705. As we noted in our earlier Memorandum Opinion at 5–6, Lowrie presents at most a case for an exemption from Rule 705, not a case for striking it down. The reasonableness of the denial of such an exemption is an issue for the United States Supreme Court, not this court.