**J. Kenneth LOWRIE, Plaintiff-Appellant,**

v.

**Joseph H. GOLDENHERSH, et al.,
Defendants-Appellees.**

No. 81–2250.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1982.

Decided Jan. 24, 1983.

Revised Aug. 22, 1983.*

---

* The opinion originally issued in this case on January 24, 1983, was amended on March 4, 1983, and is hereby revised in part and reissued in light of *District of Columbia Court of Ap-*

*peals v. Feldman,* —— U.S. ——, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), decided while plaintiff's petition for rehearing and suggestion for rehearing *en banc* was under consideration. The parties were requested to file supplemental briefs addressed to the impact of *Feldman* on this case.

On consideration of plaintiff's petition for rehearing and suggestion for rehearing *en banc,* no judge in active service having requested a vote thereon, and all of the judges on the original panel having voted to deny rehearing, it is ordered that the aforesaid petition be, and the same is hereby, denied.

Michael L. Shakman, Krupp & Miller, Chicago, Ill., for plaintiff-appellant.

Patricia Rosen, Asst. Atty. Gen., Chicago, Ill., Charles M. Munnecke, Admission to Practice & Recertification Comm., Olympia Fields, Ill., for defendants-appellees.

Before BAUER and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.**

** The Honorable William J. Campbell, Senior District Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff, J. Kenneth Lowrie, a lawyer licensed by the State of Michigan, seeks admission to the bar of the State of Illinois without submitting to the Illinois bar examination. Illinois Supreme Court Rule 705(a) permits the admission of foreign licensed attorneys without further examination provided the applicant has resided and actively and continuously practiced law in the licensing state for a period of at least five years out of the immediately preceding seven years.[1] In 1979, when Lowrie applied for admission under the rule, he was denied admission because he did not meet the rule's time requirement for practice in Michigan, the state of his license. He then applied to the Illinois Supreme Court for a waiver of the rule as applied to him. The waiver was denied and was followed by this lawsuit against the justices of the Illinois Supreme Court and the court-appointed members of the Board of Law Examiners ("Board"). The district court granted defendants' motion to dismiss for failure to state a claim upon which relief could be granted,[2] and Lowrie appeals.

I.

Lowrie was licensed to practice law in the State of Michigan in 1969. From 1969 to 1971, he served as an Assistant United States Attorney in Michigan; from 1971 to 1975, he was a Special Attorney for the United States Department of Justice in Missouri; from 1975 to 1977, he was a member of the Organized Crime Strike Force of the Department of Justice in Springfield, Illinois; and from 1977 until the present, he worked with the Organized Crime Strike Force in Chicago, Illinois. Thus, although Lowrie has been a licensed lawyer actively engaged in the profession for over thirteen years, at least six of those years in Illinois, he is not eligible under Rule 705(a) because five of his last seven years of practice were not in Michigan.

Lowrie challenges the rule as a violation of: (1) the Due Process and Equal Protection Clauses of the Fourteenth Amendment, (2) the right to travel as guaranteed by Section 2 of Article IV, and by Section 1 of the Fourteenth Amendment, (3) the Supremacy Clause of Article VI of the Constitution of the United States, and (4) the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1979). The state characterizes Lowrie's constitutional attack on the rule as a masquerade for a collateral challenge to the Illinois Supreme Court's failure to grant him an exemption from the rule's requirements. The district court held that Rule 705 does not run afoul of any constitutional provision. Additionally, the court held that it had no jurisdiction to determine whether Lowrie qualified for an exemption from the requirements of the rule.[3]

II.

*Feldman* must first be considered to determine its effect upon this case. Two bar

---

1. Illinois Supreme Court Rule 705(a) [designated as Rule 705(a)(1) in 1979 at the time of Lowrie's application] provides in pertinent part:

    Any person who has been admitted to practice in the highest court of law in any other State or territory of the United States or the District of Columbia may make application to the Board of Law Examiners for admission to the bar, without examination, upon the following conditions:
(a) The educational qualifications of the applicant are such as would entitle him to write the bar examination in this State at the time he seeks admission, and has resided, and actively and continuously practiced law in such other jurisdiction for a period of at least five years of the seven years immediately prior to making the application.

2. The Memorandum Opinion of Judge Grady is reported as *Lowrie v. Goldenhersh,* 521 F.Supp. 534 (N.D.Ill.1981).

3. *Lowrie v. Goldenhersh,* 521 F.Supp. 534 (N.D. Ill.1981). It appears that in the past, some government attorneys routinely received waivers. *In re Newman,* M.R. 2716, slip op. at 6 (Ill. July 13, 1981) (Simon, J., dissenting from the denial of a motion for waiver of Rule 705(a)(1)).

applicants for admission to the District of Columbia bar, Feldman and Hickey, petitioned the District of Columbia Court of Appeals[4] seeking waivers of the court's District of Columbia bar admission rule. The rule required graduation from a law school approved by the American Bar Association. Both petitions were denied, and both petitioners filed complaints in the United States District Court for the District of Columbia challenging the District of Columbia Court of Appeals' denials of their waiver petitions and challenging the constitutionality of the bar admission rule. The district court dismissed the complaints for lack of subject matter jurisdiction. Appeals followed, and the United States Court of Appeals for the District of Columbia Circuit reversed and remanded.[5] The Supreme Court, however, vacated the judgment and remanded the cases for further proceedings. We are not alone in finding these bar admission issues troublesome.

In *Feldman,* the waiver proceedings in the District of Columbia Court of Appeals were determined to be judicial in nature. Claims of present right to admission to the bar were made and rejected. Neither professional qualifications, nor equitable considerations were considered justification for waivers. Feldman's petition was considered to contain legal arguments against the validity of the District of Columbia rule, but in Hickey's petition the legal arguments were obscure. Nevertheless, it was held that Hickey's failure to "cite case authority in support of his arguments or make any explicitly legal contentions [did] not render the proceedings non-judicial,"[6] even though the proceedings were not cast in the common mold of judicial proceedings.

It has been recognized, but it is reemphasized in *Feldman,* that a United States District Court has no authority to review final judgments of a state court. Only the Supreme Court has that power. Therefore, to the extent that Feldman and Hickey sought reviews of their unsuccessful petitions for waiver, the district court lacked subject matter jurisdiction.[7] However, to the extent that the plaintiffs had mounted a "general challenge" to the constitutionality of the rule, the district court had jurisdiction. The general division of the allegations of the complaint between review of a waiver denial and a general constitutional challenge of the rule was, however, further refined. "If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do."[8]

### III.

■ In response to *Feldman,* Lowrie for the first time now argues that his Illinois Supreme Court waiver petition was not a personal waiver petition after all, and did not generate a *Feldman* judicial proceeding in the Illinois Supreme Court, but was instead only a request for quasi-legislative action. What Lowrie sought, he now says, was to have the Illinois Supreme Court modify its rules so as to recognize a subclass of foreign licensed United States government attorneys to whom the foreign license rule should not be applied. The justification advanced for the distinction was that United States attorneys only represent one client, the United States, which they are authorized by federal statute to do. Lowrie characterizes his as a petition for

---

**4.** The differences in the District of Columbia court system are not significant as the District of Columbia Court of Appeals corresponds to a state supreme court and possesses similar authority to enact bar admission rules.

**5.** The cases of *Feldman* and *Hickey* were not consolidated, but were considered in the same opinion by the United States Court of Appeals for the District of Columbia Circuit.

**6.** *Feldman,* 103 S.Ct. at 1314.

**7.** Failure of a petitioner to raise his constitutional claims in the state court could possibly bar even review in the Supreme Court. *Feldman,* 103 S.Ct. at 1315 n. 16.

**8.** *Feldman,* 103 S.Ct. at 1315 n. 16.

rule-making of a legislative nature, akin to private legislation. In his waiver petition, Lowrie stated several reasons why Rule 705 should be waived as to him, primarily relying upon his educational and professional qualifications.

It is now too late for Lowrie to remodel or rename his waiver petition. After setting forth his professional background, he prayed that the Illinois Supreme Court direct the Board "to waive" the requirements of the foreign license rule as to him and to proceed to process his application for bar admission. In his complaint in the district court, Lowrie alleges that he mailed his "petition for waiver" to the defendants. Had Lowrie had the benefit of *Feldman,* perhaps his waiver petition to the Illinois Supreme Court would have been drafted otherwise. The fact that the waiver denial by the Illinois Supreme Court was without reasons and evidenced only by a letter from the clerk of that court does not change the judicial nature of the proceedings. The clerk's letter, attached by Lowrie as an exhibit to his complaint, characterizes Lowrie's efforts as a "Motion for Waiver," not as a petition for rule-making by the Illinois Supreme Court acting in an administrative capacity. The letter informed him that the court had denied his motion.

In our original Lowrie opinion, relying on our decision in *Ktsanes v. Underwood,* 560 F.2d 790 (7th Cir.1977), we viewed the procedures followed by Lowrie before the Illinois Supreme Court as administrative only and not as a judicial determination. We found subject matter jurisdiction and proceeded to consider Lowrie's constitutional claims to determine if he had stated a claim upon which relief could be granted, and affirmed the district court in its finding that he had not. *Ktsanes* and our original analysis in this case are now outdated. Lowrie, in light of *Feldman,* clearly instituted a judicial proceeding, not an administrative proceeding in the Illinois Supreme

Court.[9] Finding it to be a judicial proceeding does not resolve the issues, however.

█ The next question that emerges as a result of the Illinois Supreme Court judicial proceedings viewed under *Feldman* is whether Lowrie is asking the district court to review the adverse waiver decision of the Illinois Supreme Court. The Supreme Court held in *Feldman* that to the extent that Feldman's and Hickey's suits in the United States District Court could be characterized as seeking review of the District of Columbia Court of Appeals' denial of waiver, there was no jurisdiction, but to the extent that the complaints mounted a general challenge to the constitutionality of the rule, jurisdiction would lie in the district court.[10]

The Supreme Court cites, and quotes with approval, *Doe v. Pringle,* 550 F.2d 596 (10th Cir.1976)[11]—a case somewhat similar to Lowrie's. In *Doe,* the court of appeals found that the district court had no jurisdiction to review a final order of a state supreme court denying "a particular application" to the state bar. The Supreme Court states that *Doe* properly emphasized the jurisdictional distinction between general challenges to state bar admission rules and claims which are anchored to alleged deprivations of due process and equal protection, that a state court has unlawfully denied a particular applicant admission.

"The United States District Court, in denying [the plaintiff] relief, declared that there is a subtle but fundamental distinction between two types of claims which a frustrated bar applicant might bring to federal court: The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission. The Court held that while federal courts do exercise jurisdiction over many constitutional claims which attack the state's power to license

---

**9.** The nature of the proceeding is a matter of federal law. *Feldman,* 103 S.Ct. at 1311 n. 13.

**10.** *Feldman,* 103 S.Ct. at 1315–16.

**11.** *See Feldman,* 103 S.Ct. at 1316.

attorneys involving challenges to either the rule-making authority or the administration of the rules, ... *such is not true where review of a state court's adjudication of a particular application is sought.* The Court ruled that the latter claim may be heard, if at all, exclusively by the Supreme Court of the United States." *Feldman,* 103 S.Ct. at 1316 (quoting *Doe,* 550 F.2d at 597) (emphasis in original).

The Supreme Court further explains that "[c]hallenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding. Instead, the District Court may simply be asked to assess the validity of a rule promulgated in a non-judicial proceeding."[12] If so, then it is not review of a state court decision. In *Feldman,* the Supreme Court found certain allegations in both complaints that would have required the district court to review the judgment of the District of Columbia Court of Appeals. Therefore, it was held there was no jurisdiction in the district court to that extent. The remaining allegations in the complaints were found to be general attacks on the constitutionality of the local rule. To that later extent, however, the district court was found to have jurisdiction.

Lowrie's complaint must be sifted to see if the general may be separated from the personal. As noted in *Feldman,*[13] the constitutional claims presented to the United States District Court may be so inextricably intertwined with the state court's waiver denial of a particular plaintiff's application that the district court "is in essence" being asked to review the state court decision. That it cannot do.

The defendants' position is that Lowrie seeks to review or collaterally attack the judicial decision of the Illinois Supreme Court in his waiver proceedings. Lowrie's only remedy, it is argued, is to seek a grant of *certiorari* from the United States Supreme Court.

The great bulk of the allegations of Lowrie's complaint set forth his professional qualifications, experience and good character representations in considerable detail. Equally detailed are the allegations concerning his fruitless attempts, including various letters and phone calls, to be admitted to the Illinois bar without examination, with exhibits attached to verify those allegations. The prayer for relief seeks certain orders of the United States District Court directed to the Illinois Supreme Court and its Board, to admit him to practice without examination. Lowrie's complaint could be read as merely a revised application for a waiver of the foreign license rule which had previously been denied by the Illinois Supreme Court. It could be argued that he was seeking to enlist the assistance of the federal court in securing the denied waiver. However, as the district court noted, 521 F.Supp. at 538, and as made clear in *Feldman,* the federal courts have no jurisdiction over the grant of a waiver. The strong thrust of Lowrie's complaint is purely personal, not a general constitutional attack, although now bolstered by explicit constitutional allegations. More personal detail is incorporated in the complaint than is necessary to allege standing to raise the constitutional issues.

Even in paragraph 17 of his waiver petition, Lowrie alleged that the rule bears no conceivable relationship to the legitimate ends of government sought to be protected by the Illinois rule. He thereby at least approached the raising of the constitutional issues more explicitly raised later in his district court complaint.

There is, therefore, considerable merit to the arguments of the defendants, but the intertwining is not so inextricable, nor the waiver allegations so predominant as to make the general constitutional challenges unreachable by the district court. In our view, Lowrie's complaint under *Feldman* may be considered, apart from all the surplusage, as a general attack on the constitu-

---

**12.** *Feldman,* 103 S.Ct. at 1316–17.

**13.** *Feldman,* 103 S.Ct. at 1315 n. 16.

tionality of the rule sufficient to give the district court jurisdiction and to defeat the jurisdictional challenge of the defendant's Fed.R.Civ.P. 12(b)(1) motion to dismiss.

However, the defendants also moved to dismiss under Fed.R.Civ.P. 12(b)(6) of the rule for failure to state a claim upon which relief could be granted.[14] The allegations in the complaint generally attacking the constitutionality of the rule therefore must next be considered under the defendants' motion.

### IV.

First, Lowrie argues that the Illinois Supreme Court Rule 705(a)(1) violates the Equal Protection Clause because there is no conceivable rational basis for the rule. Second, Lowrie contends that the rule embodies an irrebuttable presumption. Finally, Lowrie argues that Rule 705(a)(1) is overinclusive. We address these arguments seriatim.

■ Although the states have a constitutionally permissible and substantial interest in regulating bar admission, *In re Griffiths,* 413 U.S. 717, 723, 93 S.Ct. 2851, 2855, 37 L.Ed.2d 910 (1973), the standards of qualification promulgated "must have a rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957); *accord Martin-Trigona v. Underwood,* 529 F.2d 33, 35 (7th Cir. 1975). The district court held that the rational basis for Rule 705(a)(1) was to ensure that the licensing state is sufficiently familiar with the bar applicant to assure the character, fitness, and general competency of the applicant for admission to the Illinois bar on a foreign license pursuant to Rule 705(a)(1). The district court reasoned that the rule's requirement that one applying for

Illinois bar admission on a foreign license must have resided in and continuously practiced in the licensing state for at least five of the seven years immediately prior to the application gives the licensing state a better opportunity than the State of Illinois to observe the character and fitness of the applicant, and to apply disciplinary procedures. Illinois courts have no power to employ disciplinary measures against an out-of-state licensee. *Lowrie v. Goldenhersh,* 521 F.Supp. 534, 536 (N.D.Ill.1981). *But see People ex rel. Illinois State Bar Ass'n v. People's Stockyards State Bank,* 344 Ill. 462, 176 N.E. 901 (1931). The district court, however, conceded that the rule bears no rational relationship to a state objective of ensuring "that an attorney is knowledgeable in Illinois state law...." *Lowrie,* 521 F.Supp. at 538–39.

In his motion for reconsideration, Lowrie argued that the district court improperly held that the rational basis for Rule 705(a)(1) was "a legitimate interest in preventing professional misconduct in the practice of law," *Lowrie,* 521 F.Supp. at 536, since such a rational basis is not articulated on the face of Rule 705(a)(1), and because the issues of character and fitness are dealt with elsewhere in the rule.[15] It was improper, Lowrie argues, for the court to imply that the purpose of Rule 705(a) is also to ensure the applicant's good moral character and fitness.

The district court noted that under the conceivable rational basis test, the court may sustain any legislative classification based upon "a[ny] state of facts that reasonably can be conceived to constitute a distinction or difference in state policy...." *Lowrie,* 521 F.Supp. at 538 (quoting *Allied Stores v. Bowers,* 358 U.S. 522, 530, 79 S.Ct. 437, 443, 3 L.Ed.2d 480 (1959)). The court reiterated that the rational basis

---

**14.** Lowrie also has some serious *res judicata* problems arising out of what has now been determined to be a judicial proceeding before the Illinois Supreme Court. However, we need not reach that issue, nor was it reached by the district court.

**15.** Rule 705(c) (now Rule 705(e)) requires that applicants receive from the Committee on Character and Fitness "its certification of good moral character and general fitness to practice law." Rule 705(d) imposes on the applicant the obligation of showing that he is "of good moral character and general fitness to practice law ...."

for Rule 705(a)(1) was not to ensure competency in Illinois law, but reasoned that [c]ompetency in Illinois law is an issue distinct from the state's compelling interest in an applicant's general competency ... particularly when the applicant is an alien practitioner seeking admission without taking the bar examination. Indeed, to the extent that Canon 6 and Disciplinary Rule 6–101 of the Illinois Code of Professional Responsibility require that an attorney act competently in his practice, competency is crucial to questions of moral character and fitness, and is especially pertinent when the applicant is an experienced practitioner. When the bar examination, the usual test of competency for all other applicants, is waived as a requirement for admission, the state can look for alternative methods to insure that an applicant is competent. The Illinois requirement that an alien practitioner have practiced for an extended period of time in his licensing state provides for a reasonable means to discover factors bearing upon his competency ... and the job of the licensing state to police an attorney is made simpler when the attorney practices in that state.

*Lowrie,* 521 F.Supp. at 539.

■ We believe that a concern for bar applicants' character and fitness meets the minimum standards of the conceivable rational basis test. *See generally Schware,* 353 U.S. at 239, 77 S.Ct. at 756; *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 487–90, 75 S.Ct. 461, 464–66, 99 L.Ed. 563 (1955). Under the mere rationality level of review, it is of no moment that the rule is not the least restrictive means to a permissible end, and that the requirement of practice in the licensing state for five of the past seven years may not be the best way to ensure character and fitness. *See Williamson,* 348 U.S. at 487, 75 S.Ct. at 464. Rule 705(a)(1) is not violative of the Equal Protection Clause simply because there may be a better, more direct way of ensuring the character and fitness of attorneys who apply for admission under the rule or because the rule may work an unfair hardship in a particular case. *Martin v. Walton,* 368 U.S. 25, 26, 82 S.Ct. 1, 2, 7 L.Ed.2d 5 (1961); *Colgate v. Harvey,* 296 U.S. 404, 436, 56 S.Ct. 252, 261, 80 L.Ed. 299 (1935), *cited in Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474, 476 (7th Cir.1974). Moreover, we find some support in the legislative history of Rule 705(a)(1) for the district court's holding that a concern for the character and fitness of attorneys is a rational basis for upholding the rule.[16]

---

16. An early precursor to Rule 705(a)(1) permitted foreign licensees to be admitted to the Illinois bar without examination if the applicant could provide a certificate of good moral character. There was no "years of practice" in the licensing state requirement at all. Ill.Rev.Stat. § 3 at 169 (1874). That provision was later repealed, and the new rule added the prerequisite that the applicant's licensing state must have bar admission requirements equivalent to those of Illinois. Illinois Supreme Court Rule 58 of 1938, 370 Ill. 61.

The years-of-practice in the licensing state requirement did not become part of the Illinois Rules until 1956. Illinois Supreme Court Rule 58, § V, 7 Ill.2d 80–81 (1956). From 1956 through 1976, the rule allowed admission of an attorney on a foreign license if the applicant (1) met the Illinois law school education requirements; and (2) had resided and actively practiced law in the licensing state for three out of the past five years. If the applicant did not meet the Illinois educational requirements, the years-of-practice requirement expanded to five of the prior seven years. Illinois Supreme

Court Rule 705(a)(1) (1972); Ill.Ann.Stat. ch. 110A, § 705, Historical and Practice Notes at 449; Ill.Ann.Stat. ch. 110A, § 705, Supplement to Historical and Practice Notes at 303 (Smith-Hurd 1981–82 Supp.).

In 1977, the years-of-practice requirement increased to the present five out of the seven years immediately preceding the Illinois application and, in addition, attorneys seeking admission without examination could no longer gain licensure without meeting Illinois' educational requirements. Ill.Ann.Stat. ch. 110A, § 705, Supplement to Historical and Practice Notes at 303 (Smith-Hurd 1981–82 Supp.).

Thus, in 1977, when concerns within and without the legal community concerning the character, fitness, and professional responsibility of attorneys was on the rise, the Illinois Supreme Court again amended its bar admission rules. The 1977 amendments to Rule 705(a)(1), including the increased years-of-practice requirement, appear to have been enacted out of concern for character and fitness. Accordingly, the district court could reasonably conclude that the rational basis for the provi-

Accordingly, we hold that the district court properly found that the rational basis for the years-of-practice requirement in Rule 705(a)(1) was a concern for the character and fitness of Rule 705(a)(1) applicants. *Accord Shapiro v. Cooke,* 552 F.Supp. 581 at 586–587 (S.D.N.Y.1982).

Lowrie raises four additional arguments related to his equal protection claims. First, Lowrie asks, "[i]f the purpose of the five year's residency requirement was to insure that another jurisdiction had passed upon the applicant's character and fitness, why require—as Rule 705(d) does—that all applicants (including those who *have* met the five year requirement) also pass the Illinois Character and Fitness Committee?"

The answer to Lowrie's question is that the character and fitness aspects of Rules 705(a)(1) and 705(d) relate to different time frames. Rule 705(a)(1) addresses five of the seven years *preceding* the application. Rule 705(d) concerns the period of time contemporaneous with the foreign attorney's Illinois bar application. Moreover, it

is not unreasonable that the Character and Fitness Committee desires its own opportunity to assess an applicant's character and fitness, often via a personal interview. Accordingly, Lowrie's contention that the character and fitness component of Rule 705(a)(1) is duplicative and unnecessary is unavailing. Furthermore, Rule 705(a)(1) serves as a check on the applicant's general competency to practice law, whereas the Committee's concern is limited to the applicant's character and fitness.

■ Second, Lowrie urges that the district court should not have relied upon *Allied Stores v. Bowers,* 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959), and L. Tribe, American Constitutional Law at 996 (1978), as stating the applicable level of constitutional review for the case *sub judice.* The district court set forth the standard of review as follows:

> When applying the rational basis test, this court is free to uphold a classification based upon "a[ny] state of facts that rea-

sions of the rule was an interest in assuring the character and fitness of lawyers seeking admission to the Illinois bar.

Moreover, between 1956 and 1971, Illinois Supreme Court Rule 701 required that an attorney applying for admission on a foreign license provide a certificate from a "judge of a court of general jurisdiction in such other jurisdiction, certifying that the applicant has been so admitted *and is of good moral character*" Ill.Ann. Stat. 110A, § 705, Historical and Practice Notes at 449 (Smith-Hurd 1972) (emphasis added). In 1972, some provisions of Rule 701 were moved to Rule 705, and the requirement of furnishing the certificate of good moral character was eliminated. Ill.Ann.Stat. ch. 110A, § 705, Historical and Practice Notes at 449 (Smith-Hurd 1972). In the 1977 amendments to Rule 705, the requirement of the certificate was reinserted into the present Rule 705(d). However, while the pre-1972 certificate called upon the judge to attest to the applicant's "good moral character," the certificate mandated by Rule 705(d), as amended in 1977, requires the judge to certify only that the applicant is a member in good standing of the state bar. The reasons for no longer asking out-of-state judges to certify the good moral character of attorneys seeking admission to the Illinois bar under Rule 705 have been succinctly articulated by the drafters of the Supplement to Historical and Practice Notes, Ill.Ann.Stat. ch. 110A, § 705 at 306 (Smith-Hurd 1982–83 Supp.):

Unlike the present certificate, however, which covers only admission to and good standing at the bar, the pre-1972 certificate included a certification of good moral character. In many instances the requirement that a judge certify to good moral character had proved a hardship to applicants who were not personally known to judges in their home state and an embarrassment to conscientious judges, without affording commensurate benefit to the admitting authorities in Illinois. The limited certification procedure now reintroduced does not have the defects of the old procedure, since it calls for only verifiable information.

Thus, the present requirement, applicable to *all* attorneys seeking admission without bar examination under Rule 705, was drafted into Rule 705(a)(1) at the same time that the provision in Rule 705(d) requiring a certificate of good moral character from a judge in the licensing state was eliminated. The increase in the required number of years of practice in the licensing state (from three of the past five years, in some cases, to a blanket requirement of five out of the past seven years) and the expansion of the applicability of the requirement (from only those attorneys who did not meet Illinois' educational prerequisites, to all attorneys) suggests an attempt on the part of the Illinois Supreme Court to compensate for the loss of a certificate of good moral character from a judge in the licensing state.

sonably can be conceived to constitute a distinction or difference in state policy. . . ." *Allied Stores v. Bowers,* 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959). Professor Tribe notes that this deference to state objectives has operated ". . . quite apart from whether the conceivable 'state of facts' (1) actually exists, (2) would convincingly justify the classification if it did exist, or (3) has ever been urged in the classification's defense by those who either promulgated it or have argued in its support." L. Tribe, American Constitutional Law 996 (1978). Lowrie argues, *inter alia,* that the mere rationality level of review, as articulated in *Allied Stores* and in Professor Tribe's book, is inappropriate in the present case because (1) *Allied Stores* and the quoted language from Professor Tribe's text address state regulation in economic matters, not in the bar admission context; and (2) the case at bar implicates the fundamental right of interstate travel. United States Constitution, Art. IV, § 2; *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Since no fundamental interest is involved, and attorneys seeking Illinois bar admission under Rule 705(a)(1) are not a class of persons deserving of special judicial protection, the minimum rationality level of review applies to this case. Although some commentators have advocated intensified scrutiny of legislative means in cases which do not involve fundamental interests or suspect classifications,[17] the minimum rationality level of review prevails as the proper standard in cases such as the one before us.

■ Third, Lowrie argues that positing a concern for the character and fitness of attorneys as the justification for Rule 705(a)(1) creates an unconstitutional irrebuttable presumption that "no foreign applicant can possibly prove his good charac-

ter and fitness unless he has either (1) practiced continuously for five of the prior seven years in the jurisdiction that licensed him, or (2) passed the Illinois bar examination." We reject that argument, concluding that the irrebuttable presumption doctrine does not apply to this case.

Combining notions of equal protection with concepts of substantive and procedural due process, the irrebuttable presumption doctrine results in a review standard more stringent than the rational basis test yet less demanding than the strict scrutiny standard. J. Nowak, *Realigning the Standards of Review Under the Equal Protection Guarantee—Prohibited Neutral and Permissive Classifications,* 62 Geo.L.J. 1071, 1122 (1974). Generally, this middle level of review is limited to cases involving quasi-fundamental rights or quasi-suspect classes. *Id.* at 1082. As we observed in *Miller v. Carter,* 547 F.2d 1314, 1317 (7th Cir.1977), the "doctrine has been fatal to state laws regulating residency for purposes of voting rights and college tuition, driver's license suspension, child custody, and pregnancy disability."

Recent decisions of the Supreme Court indicate a reluctance to further extend the irrebuttable presumption doctrine beyond its present scope. *See generally Elkins v. Moreno,* 435 U.S. 647, 661, 98 S.Ct. 1338, 1347, 55 L.Ed.2d 614 (1978); *Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975). Therefore, since this case does not fit within any of the prior cases applying the irrebuttable presumption doctrine and since Rule 705(a)(1) otherwise complies with the Equal Protection Clause, we shall not strike down this rule based on the irrebuttable presumption doctrine. *Trafelet v. Thompson,* 594 F.2d 623, 630 (7th Cir.1979).[18]

---

17. *See* Gunther, *Newer Equal Protection,* 86 Harv.L.Rev. 1 (1972); Comment, *'Newer' Equal Protection: The Impact of the Means-Focused Model,* 23 Buffalo L.Rev. 665 (1974). *See also Schlesinger v. Ballard,* 419 U.S. 498, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (Brennan, J., dissenting); *McGinnis v. Royster,* 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973). *But see Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459,

52 L.Ed.2d 31 (1977) (Rehnquist, J., dissenting); Linde, *Due Process of Lawmaking,* 55 Neb.L. Rev. 197 (1976); Note, *Legislative Purpose, Rationality and Equal Protection,* 82 Yale L.J. 123 (1972).

18. The authorities relied upon by Lowrie are inapposite. First, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), and

Fourth, Lowrie contends that even if character and fitness concerns provide the rational basis for Rule 705(a)(1), the requirement of residency and practice in the licensing jurisdiction for five of the seven years preceding the Illinois application is overinclusive, in violation of the Equal Protection Clause. *See Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). In support of his argument, Lowrie cites *Lipman v. Van Zant,* 329 F.Supp. 391 (N.D.Miss.1971); *Webster v. Wofford,* 321 F.Supp. 1259 (N.D.Ga.1970); *Keenan v. Board of Law Examiners,* 317 F.Supp. 1350 (E.D.N.C.1970).

*Lipman, Webster,* and *Keenan* all invalidated bar admission rules which required applicants to reside in the licensing state for one year prior to bar application or bar examination. The residency requirements were invalidated because they tended to deny bar admission to many highly qualified applicants in the name of excluding a few applicants of questionable character and fitness.

The thrust of Lowrie's overinclusiveness argument is that the residency and practice provision of Rule 705(a)(1) bars all applicants of good character as a way of excluding a few applicants of dubious character and fitness. Lowrie contends that "[t]here is no meaningful distinction in principle between the one year residency requirement struck down in *Lipman, Webster,* and *Keenan* and the five year requirement at issue in this case."

The critical difference between the rules invalidated in those three cases and Illinois Rule 705(a)(1) is that failure to comply with the provisions of the former rules resulted in absolute barriers to bar admission, while the Illinois rule simply requires applicants in Lowrie's position to take and pass the Illinois bar examination. We find Lowrie's contention that Rule 705(a)(1) is overinclusive unconvincing.

The right of citizens to be free from unreasonable restrictions on their ability to travel interstate is guaranteed by Article IV, Section 2, of the Constitution and by Section I of the Fourteenth Amendment. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Lowrie argues that Rule 705(a)(1) burdens his right to travel because exercising his right (via practicing law outside the state of his bar admission) has resulted in his being treated differently (i.e., he must sit for and pass the Illinois bar examination) than foreign licensed attorneys who have actively and continuously practiced law in their licensing states for at least five out of the seven years immediately preceding application under the rule. The gravamen of Lowrie's contention is that requiring him to sit for and pass the Illinois bar examination constitutes a penalty on his right to interstate travel. *See Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

We cannot agree that the rule's requirement that Lowrie and others similarly situated sit for and pass the Illinois bar exam constitutes a penalty on the right to interstate travel as expounded in *Shapiro.* Under Rule 705(a)(1), Lowrie's interstate migration away from the state of his original licensure does not prevent him from taking the Illinois bar examination. Requiring Lowrie to sit for and pass the bar examination does not amount to a denial of a basic necessity of life, *Shapiro,* 394 U.S. at 634, 89 S.Ct. at 1331; *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 257–59, 94 S.Ct. 1076, 1081–83, 39 L.Ed.2d 306 (1974), nor does it infringe on a fundamental right, *Dunn v. Blumstein,* 405 U.S. 330, 340–42, 92 S.Ct. 995, 1002–03, 31 L.Ed.2d 274 (1972) (absolute denial of voting franchise). The Supreme Court, in *Shapiro,* indicated that residency requirements for bar admission, such as those imposed by Rule 705(a)(1), which do not constitute penalties on the

cases cited therein, implicated the fundamental interest in voting and/or burdened the right of interstate travel. Second, *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), struck down a presumption embodied in

a criminal statute that if the defendant possessed a firearm, then the weapon had been transported in interstate commerce after the date of the statute.

right to interstate travel, are not violative of the Equal Protection Clause. *Shapiro,* 394 U.S. at 638 n. 21, 89 S.Ct. at 1333 n. 21; *see also Shapiro v. Cooke,* 552 F.Supp. 581, at 588 (S.D.N.Y.1982).

Lowrie relies upon *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), for the proposition that "[t]he right to pursue a chosen profession free from arbitrary governmental interference is recognized as a constitutional right." *Greene,* however, ruled that there is a constitutionally protected interest in "hold[ing] specific private employment and [in pursuing] a chosen profession free from *unreasonable* governmental interference . . . ." *Greene,* 360 U.S. 474, at 492, 79 S.Ct. 1400 at 1411, 3 L.Ed.2d 1377 (emphasis added). After all, the written bar examination is a well-accepted prerequisite to bar admission for the majority of applicants in nearly every state in our Union. *See generally Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474, 476 n. 5, 477 n. 7 (7th Cir.1974). Accordingly, we agree with the district court's finding that Rule 705(a)(1) does not infringe upon Lowrie's right to interstate travel or constitute an unreasonable burden on his right to engage in his chosen profession.

■ Lowrie further argues that the rule violates the Supremacy Clause of Article VI of the Constitution. The crux of his argument is that the hiring of federal government attorneys is burdened by the years of practice and residency requirements of the rule because federal government lawyers are likely to practice outside the state of their original licensure, decreasing the likelihood that government attorneys will be able to secure bar admission under the rule.

First, acceptance of a position as a federal government attorney is a voluntary decision, made in light of all applicable factors. We do not believe that government lawyers are unaware of bar admission requirements such as those embodied in Rule 705(a)(1).

Second, we find inapposite Lowrie's reliance on *In re Neagle,* 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890). The penalty which the State of California sought to impose upon the Deputy United States Marshal in *Neagle* was to prosecute him for the death of the person who assaulted a Supreme Court Justice whom the marshal was protecting. All the State of Illinois demands of Lowrie is that he pass the same bar examination which the overwhelming majority of applicants take.

Third, we are unconvinced by Lowrie's reliance on *Nash v. Florida Industrial Commission,* 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438 (1967). *Nash* involved a Florida statute which denied unemployment compensation to persons who were unemployed as a result of labor disputes. The Court held that the statute ran afoul of the Supremacy Clause because enforcement of the state law would infringe upon the national resolve of encouraging unfettered access to the National Labor Relations Board for workers who think that they have been wrongfully dismissed. *Nash* is distinguishable because there is no national resolve that attorneys in Lowrie's position be admitted to the Illinois bar without first passing the written bar examination. We fail to see any manner in which the functions of the federal government are impaired by the strictures of Illinois Supreme Court Rule 705(a)(1). *See McCulloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819). Therefore, we conclude that Lowrie's claims relating to the Supremacy Clause are without merit.

■ The Federal Bar Association (FBA), as *amicus curiae,* argues that Rule 705(a)(1) violates the Privileges and Immunities Clause of Article IV, Section 2 of the Constitution. The gist of the FBA's contention is that the rule impermissibly discourages foreign-licensed attorneys from pursuing their chosen profession in Illinois. The contours of the FBA's argument are set forth as follows:

The Rule's requirement of in-State practice as a condition to taking the out-of-State attorney examination imposes a substantial burden on practitioners, particularly those practicing law for the federal government. Since preparing for, taking and awaiting the results of the

more rigorous general bar examination (and losing income in the interim) are dissuading prospects, the rule effectively impairs such attorneys from pursing [sic] their professional careers in Illinois.

All Rule 705(a)(1) requires of Lowrie is that he perform the very same task asked of nearly every Illinois resident seeking admission to the bar—namely, to pass the Illinois bar examination. *See Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948); *Shapiro v. Cooke,* 552 F.Supp. 581 at 588 (S.D.N.Y.1982). The practice of law is not a fundamental right or activity under Art. IV, § 2, *Leis v. Flynt,* 439 U.S. 438, 444 n. 5, 99 S.Ct. 698, 701 n. 5, 58 L.Ed.2d 717 (1979), such that the State of Illinois may not interfere with a nonresident's ability to participate in that activity without similarly interfering with a resident's participation. *Baldwin v. Fish & Game Com'n of Montana,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978). A *fortiori,* there is no fundamental right to state bar admission without state bar examination, particularly when the State of Illinois requires nearly 100% of its own residents applying for bar admission to sit for the bar exam.

The authorities commended to us by *amicus curiae* are inapplicable to the case *sub judice. Jensen v. Murphy,* No. HM80–608 (D.Md. April 23, 1981); *Application of Brewer,* 506 P.2d 676 (Alaska 1973); *State Bar of Georgia v. Granoff,* 133 Ga.App. 316, 211 S.E.2d 165 (1974); *State Bar of Georgia v. Haas,* 133 Ga.App. 311, 211 S.E.2d 161 (1974), are all distinguishable from the present case on the ground that the bar admission rules invalidated in those cases all imposed mandatory in-state residency requirements as an absolute *prerequisite* to even registering for or sitting for the state bar examination in the first instance. Illinois Rule 705(a)(1) imposes no such requirement. There is no residency requirement preventing Lowrie from taking the Illinois bar examination in the first instance. The years of practice and residency requirement at issue in this case prevents Lowrie from

being admitted to the Illinois bar *without examination.* It is primarily for this reason, as well as on the ground that we are unable to, as *amicus curiae* does, ascribe to the Illinois Supreme Court a motive of discouraging out-of-state lawyers from migrating to Illinois, that we find the FBA's Privileges and Immunities Clause contentions devoid of merit.

### Conclusion

We note that Illinois Supreme Court Rule 705(a)(1) has been vigorously attacked by an Illinois Supreme Court Justice. *In re Newman,* M.R. 2716, (Ill. July 13, 1981) (Simon, J., dissenting from the denial of a motion for waiver of Rule 705(a)(1)). The rational basis which the district court held validated the rule was severely criticized by Justice Simon. *In re Newman,* M.R. 2716, slip op. at 3 (Ill. July 13, 1981). While the views expressed by Justice Simon may well have merit, it is, of course, beyond the power of this court to modify Illinois Supreme Court Rules. Our consideration of the Illinois rule must be from a different perspective, a jurisdictional and constitutional one. We are not unmindful of the reminder by the Supreme Court in *Feldman* [19] of the great interest the states have in regulating the lawyers before their own bars since as "officers of the courts" they are essential to the administration of justice. Lowrie's prayer in his complaint seeking a federal court order admitting him to the bar of Illinois contrary to the Illinois Supreme Court rule demonstrates the confrontational potential of this litigation.

It is not possible for those of us on this court who are familiar with Lowrie's impressive professional government experience, competence, and character to consider granting him a waiver even if we were so inclined. On the other hand, we would not expect Lowrie to have any undue difficulty passing the Illinois Bar Examination. Had Lowrie submitted to the Illinois Bar Examination, as the other aspiring lawyers of this

---

**19.** *Feldman,* 103 S.Ct. at 1316 n. 16.

state must do, he probably would have been a licensed Illinois lawyer long ago.

The decision of the district court is affirmed. The parties shall bear their own costs.