

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-28-2000

# Callahan v Philadelphia

Precedential or Non-Precedential:

Docket 99-1816

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Callahan v Philadelphia" (2000). *2000 Decisions.* Paper 67.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/67

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 28, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1816

THOMAS A. CALLAHAN, IV,
        Appellant

v.

CITY OF PHILADELPHIA, RISK MANAGEMENT;
COMMONWEALTH OF PENNSYLVANIA,
WARRANT DIVISION OF THE FIRST JUDICIAL DISTRICT;
COMMONWEALTH OF PENNSYLVANIA, MUNICIPAL
COURT EVICTION UNIT; RICHARD ZIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 99-00918)
District Judge: Honorable Charles R. Weiner

Submitted under Third Circuit LAR 34.1(a)
March 21, 2000

BEFORE: MANSMANN, GREENBERG, and ALARCON,*
Circuit Judges

(Filed: March 28, 2000)

_____
* Hon. Arthur L. Alarcon, Senior Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

        James J. McEldrew, III
        Thomas A. Lynam, III
        One Liberty Place, Ste. 5050
        1650 Market Street
        Philadelphia, PA 19103

         Attorneys for Appellant

        Howard M. Holmes
        David M. Donaldson
        Zygmont Pines
        Administrative Office of PA Courts
        1515 Market Street, Suite 1414
        Philadelphia, PA 19102

         Attorneys for Appellees

Commonwealth of Pennsylvania
Warrant Division of the Division of
the First Judicial District and
Commonwealth of Pennsylvania
Municipal Court Eviction Unit

William F. Martin
Acting City Solicitor
Sarah E. Ricks
Deputy City Solicitor, Appeals
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595

 Attorneys for Appellee City of
Philadelphia

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

Thomas A. Callahan, IV, appeals by leave granted on October 1, 1999, pursuant to 28 U.S.C. S 1292(b)(2), from an amended order entered August 25, 1999, in the district court and from an earlier order entered April 23, 1999. The August 25, 1999 order certified that the district court's

2

April 23, 1999 order dismissing the action against two defendants involved a controlling issue of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation.

Callahan commenced this action by filing a complaint in the district court on February 22, 1999, against four defendants which he named as (1) City of Philadelphia Risk Management; (2) Commonwealth of Pennsylvania, Warrant Division of the First Judicial District; (3) Commonwealth of Pennsylvania, Municipal Court Eviction Unit; and (4) Richard Zia. We refer to the Warrant Division and Eviction Unit as the judicial defendants. In his complaint, Callahan asserted that Zia is a law enforcement officer employed by the judicial defendants which were responsible for his training and supervision and which issued him firearms. Callahan alleged that Zia, while acting as a law enforcement officer, beat and arrested him leading to Zia's prosecution and conviction of serious state crimes. Callahan further alleged that the judicial defendants and the City were liable to him under 42 U.S.C. S 1983 for their deliberate indifference and failure to train Zia adequately

and that Zia was liable to him under section 1983 and the common law.

The judicial defendants moved to dismiss the complaint on the jurisdictional theory that the Eleventh Amendment barred the action against them and on the statutory construction theory that they are not "persons" under section 1983 and thus cannot be found liable. The district court granted the motion on the latter ground in a memorandum opinion and the order entered April 23, 1999. In its opinion, the district court pointed out that under 42 Pa. Cons. Stat. Ann. SS 901, 911, and 1121 (West Supp. 1999), the First Judicial District "is one of sixty judicial districts in the Commonwealth and that the Municipal Court is a trial court within the First Judicial District." Thus, the court found "as a matter of law that both are part of the Unified Judicial System of the Commonwealth of Pennsylvania under the supervision of the Supreme Court of Pennsylvania," citing Pa. Const. art. V. It then held that "it is well established that state judicial

3

entities are not persons within the meaning of S 1983," citing Pokrandt v. Shields, 773 F. Supp. 758, 764 (E.D. Pa. 1991), as well as the cases Pokrandt cited. The court did not consider the Eleventh Amendment issue. Callahan moved for reconsideration but the district court denied that motion on July 14, 1999. The court subsequently entered the August 25, 1999 order, following which we granted leave to appeal.

The district court is exercising jurisdiction in this matter under 28 U.S.C. SS 1331, 1343(a)(1), (3) and (4), and 1367. We have jurisdiction under 28 U.S.C. S 1292(b) and exercise plenary review. See McClintock v. Eichelberger, 169 F.3d 812, 816 (3d Cir.), cert. denied , 120 S.Ct. 182 (1999).

II. DISCUSSION

Initially, we emphasize that the distinction between the Eleventh Amendment and 42 U.S.C. S 1983 defenses the judicial defendants have raised should be kept clear. While the judicial defendants urge that we affirm on both bases there is a difference between them, although in some cases they will overlap. Thus, we do not doubt that an action for damages under section 1983 brought unambiguously against the Commonwealth of Pennsylvania in a district court would face insurmountable hurdles, both because the Commonwealth is not a person within section 1983 and because the Eleventh Amendment would bar the court from exercising jurisdiction over the action. Yet the overlapping is not complete because the Commonwealth would not be a

person within section 1983 even if sued in a state court, though it could not raise an Eleventh Amendment objection in such a forum. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304 (1989). Similarly, the Eleventh Amendment may bar an action against a state in a federal court even though it is not brought under section 1983. See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 119 S.Ct. 2219 (1999).

That said, we still think it appropriate to make our section 1983 analysis by considering the three factors we set forth in Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655 (3d Cir. 1989) (en banc), in determining

4

whether the defendant there had an Eleventh Amendment defense, even though Fitchik was not a section 1983 action. In Fitchik, building upon our earlier decision in Urbano v. Board of Managers, 415 F.2d 247 (3d Cir. 1969), we indicated that the following factors are appropriate to consider:

> (1) Whether the money that would pay the judgment would come from the state (this includes three of the Urbano factors -- whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);

> (2) The status of the agency under state law (this includes four factors -- how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and

> (3) What degree of autonomy the agency has.

Id. at 659. We then indicated that "[a]lthough no single Urbano factor is dispositive, the most important is whether any judgment would be paid from the state treasury." Id. We believe, however, that this factor is less significant in a section 1983 "person" analysis than in an Eleventh Amendment jurisdictional analysis. In this regard, we observe that the Eleventh Amendment's central goal is to prevent entry of federal court judgments that must be paid from the state treasury. See Edelman v. Jordan , 415 U.S. 651, 664-70, 94 S.Ct. 1347, 1356-59 (1974). On the other hand, the Supreme Court in Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, approached the question of whether a state is a person within section 1983

simply as a statutory construction matter.

While we are not certain as to what would be the source
of funds to pay a judgment against the judicial defendants,
Callahan argues that it would be the City and not the
Commonwealth and we will assume that he is correct in
this assertion. Of what we are certain, however, is that the
judicial defendants receive funding from both the

5

Commonwealth and the City.1 The Supreme Court of
Pennsylvania has described the local funding of the
Pennsylvania courts as follows:

> The Judicial Code requires that County officials
> provide adequate staff for the courts:
>
> Whenever necessary, it shall be the duty of county
> officers to appoint or detail such county staff as shall
> enable the judges of the courts embracing the county
> to properly transact the business before their
> respective courts.
>
> 42 Pa.C.S.A. S 2302. Further, the County is required to
> establish and maintain a judicial and related account.
> 42 Pa.C.S.A. S 3541. Out of this account the County
> must pay:
>
> (1) Salaries, fees and expenses of:
>
> (i) Appointive judicial officers.
>
> (ii) Other system and related personnel which by
> statute are required to be paid by the political
> subdivision.
>
> (2) Salaries, fees and expenses of jurors, witnesses
> and all other persons paid under authority of law by
> the political subdivision for the maintenance of
> judicial and related functions.
>
> 42 Pa.C.S.A. S 3544. The Code also provides:
>
> Except as otherwise provided by statute, each county
> shall continue to furnish to the court of common
> pleas and community court embracing the county, to
> the minor judiciary established for the county and to
> all personnel of the system, including central staff
> entitled thereto, located within the county, all
> necessary accommodations, goods and services
> which by law have heretofore been furnished by the
> county.

1. Philadelphia as a governmental entity for purposes of this opinion is in the position of a county but we nevertheless refer to it as "City" as is

customary.

6

> 42 Pa.C.S.A. S 3722. Finally, we note that the Second Class County Code mandates that a salary board shall fix the compensation of certain court employees:
>
> The board, subject to limitations imposed by law, shall fix the compensation of all appointed county officers, and the number and compensation of all deputies, assistants, clerks and other persons whose compensation is paid out of the county treasury, and of all court criers, tipstaves and other court employes, and of all officers, clerks, stenographers and employes appointed by the judges of any court and who are paid from the county treasury.
>
> 16 P.S. S 4823. See also The County Code, 16 P.S. S 1623, where similar obligations are imposed upon counties of the third through eighth classes. In sum, it is apparent that the General Assembly intended to create a legislative scheme in which funding of the various judicial districts was primarily a responsibility of the counties, and that these responsibilities include the funding of salaries, services and accommodations for the judicial system.

County of Allegheny v. Commonwealth, 534 A.2d 760, 762–63 (Pa. 1987).2

The judicial defendants in their brief supplement the Supreme Court's explanation of judicial funding by pointing out the following with respect to state funding:

> The Commonwealth's FY 1999–2000 annual budget, Act No. 1A of 1999, provides over $55,000,000 for the salaries and expenses of common pleas judges statewide; over $44,555,000 for the salaries of district justices; about $4,400,000 for Philadelphia Municipal Court judges (as well as nearly $40,000 for Municipal Court law clerks); $650,000 for Philadelphia Traffic

County of Allegheny is a Second Class County. See Pa. Stat. Ann. tit. 16, S 210(2) (West Supp. 1999). Philadelphia is, however, a First Class County. Id. S 210(1).

> Court judges and $1,200,000 for Pittsburgh Magistrate Court judges. The state budget also provides: $3,500,000 for senior common pleas judges; nearly $750,000 for common pleas judicial education; $500,000 for district justice education; and, $200,000 for domestic violence services provided through Philadelphia Municipal Court.
>
> The state budget also provides $30,400,000 directly to the counties as reimbursement for the costs incurred by the counties in providing for the courts of common pleas, at the rate of $70,000 for each authorized common pleas judge position, of which there are 90 in the Court of Common Pleas of Philadelphia County. 42 Pa. C.S. S 911 (1999 Supplement). The state budget further provides over $18,000,000 for the Statewide Judicial Computer System, which benefits all courts in the Commonwealth.
>
> Pursuant to the mandate of County of Allegheny , . . . the Legislature has now provided $13,136,000 for the transfer of lower court administrators and their deputies to the state payroll and enacted the enabling legislation, Act. No. 12 of 1999, to effect this transfer.

Br. at 22-23 (footnote omitted).

Callahan does not dispute the foregoing, for he indicates in his reply brief that:

> The Commonwealth has provided a lengthy recitation of its 1999-2000 annual budget in which it states that it pays for Common Pleas Judges, District Justices, Municipal Court Judges, Municipal Court Law Clerks, Philadelphia Traffic Court Judges, Pittsburgh Magistrate Judges, Senior Court Common Pleas Judges, Common Pleas Judicial Education, and District Justice Education, none of which was ever contested by appellant.

Reply Br. at 6. Thus, as we have indicated, both the Commonwealth and the City fund the judicial defendants. In the circumstances, we believe that consideration of the source of funding of the courts is of limited utility in determining whether the judicial defendants are persons under section 1983.

The second Fitchik factor requires an inquiry into the status of the judicial defendants under state law, i.e., "whether state law treats an agency as independent, or as a surrogate for the state." Fitchik, 873 F.2d at 662. The third Fitchik factor is the judicial defendants' "degree of autonomy" from the state, the greater the autonomy the more likely that the defendants would be regarded as distinct from the state and thus be treated as persons under section 1983. Plainly, these factors overlap and thus we treat them together.

Application of the second and third Fitchik factors conclusively demonstrates that the judicial defendants are not persons within section 1983. The Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a "unified judicial system" which includes all of the courts in Pennsylvania. Pa. Const. art. V, S 1. Moreover, the constitution provides that the Pennsylvania Supreme Court will exercise "general supervisory and administrative authority" over the unified judicial system. Pa. Const. art. V, SS 1, 2, and 10. All courts and agencies of the unified judicial system, including the Philadelphia Municipal Court, are part of "Commonwealth government" and thus are state rather than local agencies. See Pa. Const. art. V, S 6(c); 42 Pa. Cons. Stat. Ann.S 102 (West Supp. 1999); 42 Pa. Cons. Stat. S 301 (West 1981).

The Pennsylvania court system is divided into 60 judicial districts within each of which the judges of the courts of common pleas are elected. See 42 Pa. Cons. Stat. Ann. S 901(a) (West Supp. 1999). The legislature may alter the number and boundaries of the districts only with the advice and consent of the Supreme Court. See Id.S 901(b). The position of the Philadelphia courts within this unified judicial system is quite clear for as the court said in Robinson v. Court of Common Pleas of Philadelphia County, 827 F. Supp. 1210, 1211 n.4 (E.D. Pa. 1993), "[t]he Court of Common Pleas . . . and Philadelphia Municipal Court are trial courts within the First Judicial District, the territorial jurisdiction of which is Philadelphia." Remarkably, Callahan seems to recognize that the judicial defendants are state entities. Indeed, he has sued them as "Commonwealth of Pennsylvania" in each instance before

describing them in more detail. Moreover, as the quotation above from his reply brief demonstrates, he even refers to the judicial defendants on this appeal as "the Commonwealth." Quite naturally the judicial defendants

have seized on this characterization to contend that they are not persons within section 1983.

The judicial defendants point out that "[t]he Supreme Court of Pennsylvania has no doubt about its supervisory and administrative authority over the lower courts," and, as particularly germane here, the Philadelphia courts. Br. at 16. Thus, in December 1990 the Supreme Court, concerned with "serious and ongoing fiscal and administrative problems in the Philadelphia Courts," see Petition of Blake, 593 A.2d 1267, 1268 (Pa. 1991), by administrative order designated two justices to oversee directly the First Judicial District. When the justices implemented this administrative order by directing the president judge of the Philadelphia Court of Common Pleas to make far-reaching personnel changes, he challenged this order. The Supreme Court in Petition of Blake, 593 A.2d at 1268-69, rejected this challenge, holding:

> Article V of the Pennsylvania Constitution, which defines the judiciary, begins with the words:`The judicial power of the Commonwealth shall be vested in a unified judicial system. . . .' Within this unified system, it is required that `[t]he Supreme Court shall exercise general supervisory and administrative authority over all the courts. . . .' Art. V, S 10(a). In furtherance of that responsibility, this court has for some time monitored the administration of the courts of Philadelphia with increasing unease.

. . .

> [P]ursuant to the Constitution and the Judicial Code, it is fully within this Court's authority to prescribe the powers and duties of the president judges and any limitations thereon. The Constitution does no more than establish the office of president judge and the manner in which it shall be filled.

10

. . .

> [T]he Supreme Court as the governing authority, 42 Pa.C.S. S 102, has the power to alter the duties of president judges described elsewhere in the statute. To the extent that they affected the powers of President Judge Blake, the Order of December 19, 1990 and the April 17, 1991 directive of Mr. Justice Papadakos are consistent with this authority as well as the Court's general supervisory and administrative authority over the unified judicial system, Pa. Const. Art. V, Section 10(a).

The Supreme Court recently reaffirmed its supervisory authority over the lower courts in First Judicial District v. Pennsylvania Human Relations Commission, 727 A.2d 1110 (Pa. 1999). In that case, the Supreme Court held that the Pennsylvania Human Relations Commission, even though a state agency, could not review employment decisions of the First Judicial District or any lower court. In this regard the court held that:

> Such interference in the operation of courts is prohibited by the separation of powers doctrine. The supreme court has the sole power and the responsibility to supervise the `practice, procedure, and the conduct of all courts.' Neither the legislative branch nor the executive branch of government acting through an administrative agency may constitutionally infringe on this judicial prerogative.

727 A.2d at 1112 (footnote omitted).

The authorities we have reviewed make it perfectly clear that the judicial defendants are not independent of the Commonwealth and hardly can be regarded as having significant autonomy from the Pennsylvania Supreme Court. They are part of the unified judicial system subject to the control of the Supreme Court. Thus, while it is true that the judicial defendants largely are funded locally, we hold that they are not persons within section 1983. See Greater Los Angeles Council on Deafness, Inc. v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987) (A Los Angeles trial court though largely funded by the county is state agency for Eleventh Amendment purposes because "state case law and

11

constitutional provisions make clear that the Court is a state agency.").

In reaching our result, we make two further observations. First, we have not overlooked Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir.), cert. denied, 120 S.Ct. 499 (1999), on which Callahan strongly relies. In Carter, we held that the Philadelphia District Attorney's Office was not entitled to Eleventh Amendment immunity, at least with respect to administrative functions. Carter plainly is distinguishable as the following quotations from the opinion demonstrate: "Pennsylvania's Constitution expressly defines District Attorneys as county rather than state officers." id. at 349; "Pennsylvania statutes also reflect the local status of the DA's Office." id.; "Consistent with its constitutional and statutory law, Pennsylvania case law defines district attorneys -- Philadelphia District Attorneys in particular --

as local, and expressly not state, officials." id. at 350. The judicial defendants simply are not in the same position as district attorneys with respect to their relationship with the Commonwealth.

Our second observation is that while, as the judicial defendants recognize, br. at 11, we seem not to have decided the issue in any published precedential opinion, the district courts repeatedly have held that all components of the judicial branch of the Pennsylvania government are state entities and thus are not persons for section 1983 purposes. See Pokrandt v. State, 773 F. Supp. 758; Mathias v. Supreme Court of Pennsylvania, 576 F. Supp. 1178 (W.D. Pa. 1983); Delgado v. McTighe, 442 F. Supp. 725 (E.D. Pa. 1977); County of Lancaster v. Philadelphia Elec. Co., 386 F. Supp. 934 (E.D. Pa. 1975). Thus, our opinion is consistent with the reported decisions in similar situations.

III. CONCLUSION

For the foregoing reasons, we will affirm the orders of August 25, 1999, and April 23, 1999.

12


A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

13